IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CENTEX HOMES, a Nevada General §
Partnership, §
                                §
          Plaintiff,            §
                                §
V.                              §          No. 3:13-cv-719-BN
                                §
LEXINGTON INSURANCE COMPANY, §
                                §
          Defendant.            §

**MEMORANDUM OPINION & ORDER ON PLAINTIFF'S MOTION
TO DISMISS DEFENDANT'S COUNTERCLAIMS**

This is a civil action related to the defendant's duty to defend and accompanying

obligations. *See* Dkt. No. 66. Plaintiff Centex Homes filed a Motion to Dismiss certain

of Defendant Lexington Insurance Company's affirmative defenses and counterclaims.

*See* Dkt. No. 35. Defendant filed its response [Dkt. No.51] and Plaintiff filed a reply

[Dkt. No. 56], asserting their respective positions. Plaintiff's Motion to Dismiss

Defendant's Counterclaims [Dkt. No. 35] is DENIED.

**Background**

In its most recent pleading, Plaintiff asserts causes of action for breach of

contract and violations of Chapters 541 and 542 of the Texas Insurance Code. *See* Dkt.

No. 66 at 11-13.[1] In its Answer to Plaintiff's Fourth Amended Complaint and

_____

[1] Plaintiff filed its Motion to Dismiss in relation to its Second Amended
Complaint and Defendant's Second Amended Answer. However, at an August 9, 2013
hearing, the Court requested that Plaintiff file an amended Complaint to properly
identify the member entities of Centex Real Estate Holding, L.P. as well as the

Counterclaim ("Answer"), Defendant asserted numerous affirmative defenses and certain counterclaims. Plaintiff argues that the Court should strike or dismiss Defendant's counterclaims because they are subsumed by, and redundant of, Plaintiff's affirmative claims and Defendant's affirmative defenses and because they fail to state a claim on which relief can be granted. More specifically, Plaintiff argues that Defendant's claim for declaratory relief is "nothing more than a recitation of the same affirmative defenses it has pleaded in opposition to Plaintiff's Second Amended Original Complaint" and therefore does not raise any new issue that is not already subsumed within Plaintiff's complaint. *See* Dkt. No. 35 at 2. Plaintiff claims that Defendant's counterclaims for breach of contract and breach of the implied covenant of good faith should be dismissed for failure to state a claim on which relief can be granted. *See id.* Plaintiff contends that, under both Texas and California law, an insured's duty to cooperate is only a condition precedent to coverage and cannot give rise to an affirmative cause of action by an insurer. *See id.*; Dkt. No. 56 at 14-20.

Defendant responds that its request for declaratory relief duplicates neither Plaintiff's claims nor Defendant's affirmative defenses and that Plaintiff does not provide any examples or evidence suggesting otherwise. *See* Dkt. No. 51 at 3-6. As to

---

principal place of business of each of Centex's general partners. Plaintiff further amended its complaint on November 6, 2013. The amendments were all related to the party identification. Defendant filed its Fourth Amended Answer in response to the amended complaints. As such, the substance of the allegations in the Fourth Amended Complaint and Answer remain the same as those found in the second amended complaint and answer. Because the Fourth Amended Answer and Complaint are the live pleadings, however, the Court will refer to those documents throughout the course of this Opinion.

Defendant's breach of contract and covenant of good faith claims, Defendant argues that California law and Texas law differ on the issue, that California law does recognize such affirmative causes of action, that California law applies, and that Defendant therefore sufficiently stated a viable claim on which relief may be granted.

**Legal Standards**

1.    Motions to Strike under Federal Rule of Civil Procedure 12(f).

Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The power to strike a pleading is within the Court's discretion but should be sparingly used. *See United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012). The motion to strike on grounds of immateriality or impertinence "'should be granted only when the pleading to be stricken has no possible relation to the controversy.'" *Id.* (quoting *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962)). Further, matter is not "scandalous" for purposes of Rule 12(f) if it is "directly relevant to the controversy at issue and [is] minimally supported in the record." *Id.*

With regard to striking alleged defenses, "although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982).

"Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f)

are viewed with disfavor and are infrequently granted." *Jacobs v. Tapscott*, No. 3:04-cv-1968-D, 2004 WL 2921806, at *2 (N.D. Tex. Dec.16, 2004), *aff'd on other grounds*, 277 F. App'x 483 (5th Cir. 2008). And Rule 12(f) only applies to pleadings as defined by Fed. R. Civ. P. 7(a). *See, e.g.*, 5C Charles Alan Wright et al., FED. PRAC. & PROC. 1380 & n.8.5 (3d ed. 2012) ("Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a); thus motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f)."); *Groden v. Allen*, No. 3:03-cv-1685-D, 2009 WL 1437834, at *3 (N.D. Tex. May 22, 2009) (Rule 12(f) "does not permit the Court to strike motions or matters within them because the rule applies only to pleadings").

2.    Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007) (internal quotations omitted). To state a claim on which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face

-4-

when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (internal quotation marks omitted). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D.

Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

**Analysis**

Plaintiff argues that the Court should strike Defendant's declaratory judgment claims because they are subsumed by the resolution of Plaintiff's affirmative claims and because they are redundant of Defendant's affirmative defenses. Plaintiff also contends that Defendant's remaining causes of action must be dismissed because such claims do not constitute affirmative causes of action for a defendant under Texas or California law.

1.    Defendant's declaratory judgment actions are not redundant.

Plaintiff moves to strike Defendant's claim for declaratory relief because the claims are "nothing more than a recitation" of the same affirmative defenses that Defendant pleaded and the affirmative claims that Plaintiff asserted. *See* Dkt. No. 35 at 2. More specifically, Plaintiff claims that the declaratory relief sought overlaps with

Defendant's Second, Fifth, Ninth, Tenth, and Seventeenth Affirmative Defenses. *See id.* at 3-4. Plaintiff does not specifically identify the overlap between its claims and Defendant's claims but states only that the counterclaims are "subsumed" by matters raised in Plaintiff's complaint. *Id.* at 4.

In response Defendant argues that Plaintiff does not identify any of its allegations that mirror Defendant's request for declaratory relief and that all of the cases on which Plaintiff relies involve a situation wherein a plaintiff's affirmative claims and a defendant's counter claims mirror one another. *See* Dkt. No. 51 at 3. Even if that were not the case, Defendant contends that its affirmative defenses and requests for declaratory relief are distinct. *See id.*

Federal courts have broad discretion to grant or refuse declaratory judgment. *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). Federal Rule of Civil Procedure 12 does permit a court to strike or dismiss a counterclaim on the basis that it is redundant. To do so, however, the Court should consider "whether the declaratory judgment 'serves a useful purpose' by asking 'whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim.'" *In re ATP Oil & Gas Corp.*, No. 12-36187, 2013 WL 5308862, at *1 (Bankr. S.D. Tex. Sept. 18, 2013); *see also Redwood Resort Props., LLC v. Homes Co. Ltd.*, No. 3:06-cv-1022-D, 2007 WL 1266060, at *4-*5 (N.D. Tex. Apr. 30, 2007). This analysis requires the Court to determine whether what a counterclaim requests is the opposite of the affirmative causes of action pleaded. *See ATP Oil & Gas Corp.*, 2013 WL 5308862 at *1; *Redwood Resort Props., LLC*, 2007 WL 1266060 at *4-

*5. In undertaking this analysis, the Court should consider "potential qualitative differences between merely prevailing in Plaintiff's lawsuit, and receiving an affirmative declaration of rights to a declaratory judgment." *Blackmer v. Shadow Creek Ranch Development Co. Ltd. P'ship*, No. H-07-681, 2007 WL 7239968, at *1 (S.D. Tex. June 26, 2007). This is so even when "[t]here is a high degree of congruence" between Defendant's counterclaims and affirmative defenses. *Id.*

Plaintiff did not specify which of its affirmative causes of action subsumed Defendant's declaratory judgment actions. In its Breach of Contract cause of action, Plaintiff alleges that – and thereby necessitates a judicial finding whether – Defendant breached its obligations by (1) its failure to pay and/or (2) its unreasonable delay in (i) accepting its duty to defend and/or pay Plaintiff's defense costs and (ii) providing Defendant's coverage position with respect to the underlying litigation. *See* Dkt. No. 66 at 11-12. This cause of action would also include determining whether Defendant had a duty to defend, but neither party seems to dispute that allegation. *See* Dkt. No. 117 at 2-3. Plaintiff also alleges the Defendant's failure to make payments, or its delay in making payments, violated the Texas Insurance Code. Plaintiff alleges additional violations of the Texas Insurance Code, including Defendant's failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which Defendant's liability had become clear; to provide a reasonable explanation of Defendant's failure to pay all claims; to provide a reservation of rights letter within a reasonable time frame; and to conduct a reasonable investigation before failing to pay defense costs. *See* Dkt. No. 66 at 12-13.

In its declaratory judgment cause of action, Defendant seeks a declaration that (1) Defendant has a right to control the defense of the relevant claims; (2) Plaintiff is not entitled to appoint independent counsel under California Civil Code; and (3) Plaintiff's refusal to acknowledge that Defendant has the right to control the defense and select counsel and its insistence that Defendant continue to pay the fees and costs of the law firm selected by Plaintiff was a breach of Plaintiff's duty to cooperate under the relevant policies. *See* Dkt. No. 73 at 19-20.

These claims are not redundant. If Defendant had requested a declaratory judgment that it had timely and properly accepted its duty to defend and to pay Plaintiff's defense costs and that it had provided Defendant's coverage position with respect to the underlying litigation, then the claims would be redundant. So too would there be redundancy if Defendant sought a declaration that it did not fail (1) to make payments in a timely fashion; (2) to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim; (3) to provide a reasonable explanation of Defendant's failure to pay all claims; (4) to provide a reservation of rights letter within a reasonable time frame; and (5) to conduct a reasonable investigation before failing to pay defense costs.

Instead, Defendant seeks a different declaration – essentially, that it had the right to control the defense and appoint the counsel. Under Plaintiff's Complaint, the Court could – hypothetically – find that Defendant breached its duties and violated the Texas Insurance Code without an affirmative determination regarding whether Defendant had a right to control the defense and appoint counsel.

Plaintiff provides the Court with a comparison of the affirmative defenses that it contends are redundant to Defendant's declaratory judgment actions. *See* Dkt. No. 56 at 11. The Court reviewed the requests and the affirmative defenses, and, while some level of similarity does exist, they are not redundant. A declaration that Defendant has a right to control the defense is not the same as an assertion that Defendant has no liability because Plaintiff's acts were unauthorized. The Court could – again, hypothetically – find that Plaintiff's acts were unauthorized but make no finding as to why they were unauthorized. And a reservation of rights to contend that a law other than Texas law applies is not a declaration that Plaintiff cannot appoint independent counsel under California law. These examples demonstrate "the potential qualitative difference between merely prevailing in Plaintiff's lawsuit, and receiving an affirmative declaration of rights pursuant to a declaratory judgment." *Blackmer*, 2007 WL 7239968 at *1.

The Court also notes that in many decisions on which Plaintiff relies, the courts dismissed the plaintiff's declaratory judgment actions because they were redundant of other causes of action pleaded by plaintiff. *See* Dkt. No. 56 at 13 (citing *Cypress/Spanish Ft. I, L.P. v. Prof'l Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 710 (N.D. Tex. 2011); *Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth, L.L.C.*, No. 3:04-cv-2518-D, 2005 U.S. Dist. LEXIS 10557, at *14-*15 (N.D. Tex. June 1, 2005)). That is not the situation here.

In light of the fact that Rule 12(f) motions are often viewed with disfavor and are infrequently granted, the Court concludes that Plaintiff did not meet its burden under

Rule 12(f) for the Court to strike Defendant's declaratory judgment claims. The Court

finds that declaratory judgment counterclaim is not a mirror image of Plaintiff's causes

of action or redundant of its own affirmative defenses.

As such, the Court DENIES Plaintiff's motion to strike Defendant's declaratory

judgment causes of action.

2.    Dismissal of Defendant's counterclaims under Rule 12(b)(6) is not warranted.

To determine whether Defendant sufficiently pleaded a cause of action under

Rule 12(b)(6), the Court must determine whether the alleged causes of action – breach

of contract and good faith – can stand as affirmative causes of action. This turns on a

choice-of-law analysis.

Before deciding which state's substantive law should control the issues raised

by the parties here, "the Court must first determine which choice-of-law rules should

be applied." *In re Soporex, Inc.*, 446 B.R. 750, 761 (Bankr. N.D. Tex. 2011). Here, both

parties assert that Texas choice-of-law rules should determine the applicable laws in

this case. *See* Dkt. No. 51 at 6; Dkt. No. 56 at 9.

As noted by both parties, Texas courts utilize the "most significant relationship"

test to determine which state's law applies to a particular substantive issue. *See*

*Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 n.2 (5th Cir. 2001) (citing

*Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)). This test is based on

the *Restatement (Second) of Conflict of Laws* and utilizes a multi-factor methodology

to determine which state has the most significant relationship to the substantive issues

involved in a dispute. *See Duncan*, 665 S.W.2d at 421. Deciding which state's laws

should govern an issue "is a question of law for the court to decide." *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000) (citing *Duncan*, 665 S.W.2d at 421). *See also McKinney BB v. U.S. Realty Advisors, LLC*, No. 01-11483, 2003 U.S. App. LEXIS 28011, at *18 (5th Cir. Jan. 24, 2003) ("[T] question of which state's law to apply is a question of law."); *Janvey v. Suarez*, No. 3:10-cv-2581-N, 2013 WL 5663107, at *3 (N.D. Tex Oct. 17, 2013). But, this legal determination involves a factual inquiry. *See Hughes Wood Products*, 18 S.W.3d at 204; *Suarez*, 2013 WL 5663107, at *3. That is, "the party urging application of another state's substantive law [must] furnish the Court with 'sufficient information' to establish that the law of another state applies." *Janvey v. Alguire*, 846 F. Supp. 2d 662, 671 (N.D. Tex. 2011) (quoting *Holden v. Capri Lighting, Inc.*, 960 S.W.2d 831, 833 (Tex. App. – Amarillo 1997, no pet.)) (internal quotations omitted). Absent such sufficient information, "the failure to provide adequate proof of choice of law ... results in a presumption that the law of the foreign jurisdiction is identical to the law of Texas." *Alguire*, 846 F. Supp. 2d at 671 (quoting *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex.App. – Corpus Christi 1999, pet. denied)) (internal brackets omitted). When two states' laws are substantially the same, this precludes the need to undertake a choice-of-law analysis. *See Lexxus Int'l, Inc. v. Loghry*, 512 F. Supp. 2d 647, 668 n.17 (N.D. Tex.2 007); *cf. Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 377–78 (Tex. App. – Fort Worth 2003, pet. denied) ("Before undertaking a choice of law analysis, we look to whether a conflict of law exists. If no conflict exists on the issues, we need not decide which state's law applies.").

-12-

Because no choice-of-law analysis would be required if California and Texas law were consistent on this issue, the Court must first determine if these jurisdictions' laws differ with respect to whether Defendant's alleged breach constitutes an affirmative cause of action. Defendant alleges Plaintiff was "mandated to cooperate" with Defendant under the terms of some of the policies and that Plaintiff breached this duty. Dkt. No. 73 at 21. Defendant's breach of implied covenant of good faith and fair dealing claim is also based on Plaintiff's alleged failure to cooperate. *See id.*

Plaintiff states that the cases on which Defendant relies do not support Defendant's contention that these causes of action are plausible even under California law. Rather than explicitly citing to or relying on cases denying that such a cause of action exists, however, Plaintiff distinguishes the cases on which Defendant relies and cites to several, mostly dated California cases that, on review, do not fully support its position. *See* Dkt. No. 56 at 15-18. While an insured's breach of a cooperation clause can act as a defense to its breach of contract claim, *see Cybernet Ventures, Inc. v. Hartford Ins. Co. of the Midwest*, 168 F. App'x 850, 852 (9th Cir. Feb. 23, 2006), California courts also recognize an affirmative cause of action, sounding in breach of contract, for the causes of action asserted by Defendant, *see Sierra Pac. Indus. v. Am. States Ins. Co.*, 883 F. Supp. 2d 967, 976-77 (E.D. Cal. 2012); *Travelers Prop. v. Centex Homes*, No. C 10-02757 CRB, 2011 WL 1225982, at *6 (N.D. Cal. Apr. 11, 2011) ("The right to control the defense imposes upon an insured the duty to cooperate with the insurer with regards to its defense. Failure to comply with a policy's cooperation clause constitutes breach of the insurance contract." (internal citations omitted)); *Cal. Fair*

*Plan Assoc. v. Politi*, 220 Cal. App. 3d 1612, 1618-19 (Cal. Ct. App. 1990) (finding that an insurer could bring an affirmative breach of covenant of good faith and fair dealing claim but could only recover contract damages). In fact, under California law, an "insurer's duty is unconditional and independent of the performance of plaintiff's contractual obligations." *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032, 10401 (Cal. 1973). This stands in contrast to the position put forth by Plaintiff that "'the only applicable case law treats cooperation clauses as conditions precedent, relieving an insurer of liability rather than creating an affirmative cause of action against its insured.'" Dkt. No. 35 at 6-7 (quoting *The Phila. Indem. Ins. Co. v. Stebbins Five Companies, Ltd.*, No. 3:02-cv-1279-M, 2002 WL 31875596 (N.D. Tex. Dec. 20, 2002)).

Plaintiff correctly points out that Texas does not recognize an affirmative cause of action for a breach of cooperation clause or breach of good faith. *See Progressive County Mut. Ins. Co. v. Trevino*, 202 S.W.3d 811, 815-16 (Tex. App. – San Antonio 2006, no pet.); *Evanston Ins. Co. v. Tonmar, L.P.*, 669 F. Supp. 2d 725, 732 (N.D. Tex. 2009); *Phila. Indem. Ins. Co.*, 2002 WL 31875596 at *6. To support its contention that Texas recognizes such a cause of action, Defendant relies on cases that are not on point. *See* Dkt. No. 51 at 9 (citing *USAA County Mut. Ins. Co. v. Cook*, 241 S.W.3d 93, 101 (Tex. App. – Houston [1st Dist.] 2007, no pet.); *CGL Underwriters v. Edison Chouest Offshore, inc.*, 8 F.3d 21, at *7-*8 (5th Cir. Oct. 22, 1993)). The decisions on which Defendant relies do discuss a "breach of the co-operation clause" found in insurance policies but do so in the context of a breach of cooperation clause defense. Such a defense does exist: A defendant may assert that a breach of such a duty relieved the

-14-

insurer of liability under the policy, *see Filley v. Ohio Cas. Ins. Co.,* 805 S.W.2d 844, 847 (Tex. App.–Corpus Christi 1991, writ denied), but that is not the same as an affirmative cause of action.

Thus, Texas and California law do differ on this issue. The Court must therefore undertake a choice-of-law analysis to determine which law applies.

"Under Texas choice-of-law principles, contract disputes are governed by 'the law of the state with the most significant relationship to the particular substantive issue.'" *W.R. Grace & Co. v. Cont'l Cas. Co.,* 896 F.2d 865, 873 (5th Cir. 1990) (citing *Duncan,* 665 S.W.2d at 421); *Schneider Nat. Transp. v. Ford Motor Co.,* 280 F.3d 532, 536 (5th Cir. 2002). This is the test articulated by the *Restatement (Second) of Conflict of Laws* sections 188 and 193 and their comments. Defendant maintains that the location of the insured risk receives controlling weight in determining the proper law to be applied. *See* Dkt. No. 51 at 6. According to Defendant, because the insurance contracts cover insured projects located in California – the Astoria Project and the Element Project – the parties' presumed intention would be that California law applies because that is almost certainly where any liability for property damages or bodily injury would arise. *See id.* at 6-7. Plaintiff did not reply to Defendant's argument, relying on its contention that no conflict of law exists.

*Restatement (Second) of Conflict of Laws* section 188 provides that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties...." RESTATEMENT (SECOND) OF CONFLICT

OF LAWS § 188(1) (1971). Section 188 attempts to "unearth[] and uphold[] contracting parties' intent as to the governing law." *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 404 (5th Cir. 2004). While several types of contacts are provided in Section 188, Section 193 further provides that the validity of an insurance contract, and the rights created thereby, should be determined by the law of the state where the insured risk is located. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193; *see also Fulcrum Ins. Co. v. Barber*, 2006 WL 4511947, at *3 (W.D. Tex. Oct. 24, 2006) ("It does not matter where the particular act which invokes the policy's coverage happens. 'Instead, the court must look to the principle location of the insured risk during the term of the policy to determine the location of the subject matter of the contract.'" (internal citations omitted)). Section 193 also states that its choice-of-law provision based on the location of the insured risk applies "unless with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties, in which event the local law of the other state will be applied." *Id.*; *see also Zurich Am. Ins. Co. v. Vitus Marine, LLC*, No. H-11-3022, 2011 WL 4972025, at *4 (S.D. Tex. Oct. 19, 2011) (finding a state to have more significant relationship than the insured's location where the dispute involved contract negotiation and the negotiation occurred in a state other than the one in which the insured was located).

The Court is of the opinion that California law applies to Defendant's counterclaims. Defendant's counterclaims relate only to the Astoria Policy and Element Policy. These policies cover condominiums located in California. *See* Dkt. No. 73 at 22-23. Moreover, Plaintiff alleges that Defendant breached its duty to defend related to

cases filed and litigated in California, the causes of action asserted against Plaintiff in those cases involve primarily California law, and Plaintiff's counsel representing it in connection with the California condominiums is located in California. *See* Dkt. No. 66 at 4-5. Where the events giving rise to the litigation, the defense costs, and the attorneys are all located in one state, that state's law applies. *See Schneider Nat. Transp.*, 280 F.3d at 536 (where the litigation giving rise to a case occurred in Texas, the defense costs were incurred in Texas, and the defending attorneys were located in Texas, Texas has the most significant relationship to the substantive issues to be resolved and Texas law was appropriate). Accordingly, California law should apply.

As explained above, this Court is not persuaded by Plaintiff's argument that, under California law, Defendant cannot proceed on its breach of duty to cooperate and breach of duty of good faith and fair dealing claims as a matter of law. Moreover, accepting all well-pleaded facts as true, viewing them in the light most favorable to Defendant, as the Court must, Defendant has met its pleading burden. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205-06. In its counterclaims, Defendant provides a factual foundation and allegations that put Plaintiff on notice of its claims. *See* Dkt. No. 73 at 21-22. Plaintiff does not seem to argue otherwise. In any event, such allegations constitute more than a threadbare or formulaic recitation of the elements of a cause of action. *See Iqbal*, 556 U.S. at 678.

As such, Plaintiff's motion to dismiss Defendant's second and third causes of action is DENIED.

## Conclusion

Plaintiff's Motion to Dismiss Defendant's Counterclaims [Dkt. No. 35] is DENIED.

SO ORDERED.

DATED: March 24, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE