IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CENTEX HOMES, a Nevada General Partnership, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:13-cv-719-BN |
| LEXINGTON INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER ON DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>REGARDING RIGHT TO CONTROL DEFENSE</u>**

Defendant Lexington Insurance Company ("Defendant" or "Lexington") has filed a motion for partial summary judgment. *See* Motion for Partial Summary Judgment regarding Right to Control Defense [Dkt. No. 43]. Plaintiff Centex Homes ("Plaintiff" or "Centex") filed a Response [Dkt. Nos. 60 & 61], and Defendant filed a Reply [Dkt. No. 67].

Plaintiff also filed a motion to strike evidence submitted by Defendant with its reply, *see* Dkt. No. 68, to which Defendant filed no response. No response having been filed, and the Court having not considered any of the evidence in reaching its decision, Plaintiff's motion to strike [Dkt. No. 68] is DENIED as moot.

The Court makes the following rulings with respect to Defendant's Motion for Partial Summary Judgment.

## Background

This case involves a coverage dispute between an insured and insurer. Plaintiff is primarily in the business of designing, developing, and constructing condominiums and other housing complexes throughout the country. *See* Dkt. No. 66 at 2. In constructing these condominium projects, Plaintiff purchases "wrap" insurance policies that cover Plaintiff as a general contractor and all subcontractors performing work in connection with the insured project. *See id.* at 3. Plaintiff purchased five such wrap policies from Defendant, but only two of these policies are at issue in Defendant's Motion for Partial Summary Judgment, so the Court will only summarize the facts related to the two relevant policies.

The following facts are undisputed. The Element Development Project ("Element") involves an eight-story condominium built by Plaintiff in San Diego, California. *See* Dkt. No. 66 at 3. Plaintiff purchased a "wrap" policy on the Element Project (the "Element Policy"). *See id.* Under the Element Policy, there is an "each occurrence" limit of $5,000,000 and a "Retained Amount" of $500,000 for "each occurrence." *See* Dkt. No. 63-2 at 1. In other words, Defendant is not obligated to make any payments under the Element Policy until Plaintiff has reached its Retained Amount of $500,000. The Element Policy mandated a "Joint Defense Approach," which reflects that the named insured would cooperate with Defendant in connection with the investigation, defense, and resolution of any occurrence, offense, claim, or suit under the Policy. *See* Dkt. No. 43-1 at 65. In April 2009, members of the Element Homeowners' Association filed suit in California against Plaintiff (the "Element

Litigation") for several causes of action, including construction defects. *See id.* at 4; Dkt. No. 63-5 at 1 (Second Amended Complaint in Element Litigation). Plaintiff and Defendant offer different accounts as to what transpired after the Element Litigation was filed, as detailed below.

The Astoria Development Project ("Astoria") involves a 15-building condominium project located in Sacramento, California. *See* Dkt. No. 66 at 5. Plaintiff purchased a "wrap" policy on the Astoria Project (the "Astoria Policy"). *See* Dkt. No. 66 at 3. Under the Astoria Policy, there is an "each occurrence" limit of $5,000,000 and a "Retained Amount" of $150,000 for "each occurrence." *See* Dkt. No. 63-2 at 1. In other words, Defendant is not obligated to make any payments under the Astoria Policy until Plaintiff has reached its Retained Amount of $150,000. The Astoria Policy also mandated a "Joint Defense Approach," which reflects that the named insured would cooperate with Defendant in connection with the investigation, defense, and resolution of any occurrence, offense, claim, or suit under the Policy. *See* Dkt. No. 43-1 at 22. In February 2011, members of the Astoria Owners' Association filed suit in California against Plaintiff ("Astoria Litigation") for several causes of action, including construction defects. *See* Dkt. No. 43-1 at 85. Plaintiff and Defendant offer different accounts as to what transpired after the Astoria Litigation was filed, as detailed below.

Plaintiff and Defendant disagree with respect to the following: Plaintiff's exhaustion of the retention amounts under the Policies; the timing of Defendant's agreement to provide a defense; Defendant's reservation of rights explanation; Defendant's payment of defense costs; and when Defendant provided notification that

Plaintiff's selected counsel – Newmeyer & Dillion – was not acceptable.

Defendant claims that Plaintiff did not provide the proof of its payment and satisfaction of the applicable Retained Amounts for both the Astoria Litigation and Element Litigation (collectively, the "Underlying Litigation"), as required under the Policies, until much later than Plaintiff claims that it did. *See* Dkt. No. 43 at 5. Defendant further contends that it immediately told Plaintiff that it would not agree to Newmeyer & Dillion's continuing its representation of Plaintiff in the Underlying Litigation and that this information is covered in its Claim Account Instructions, which Defendant provided to its insureds. *See* Dkt. No. 43-1 at 119-136. Defendant takes the position that, in the face of Defendant's stance on legal counsel, Plaintiff refused to switch counsel in violation of Plaintiff's obligations under the Element and Astoria Policies. *See* Dkt. No. 43-1 at 140-142.

Plaintiff counters that it properly provided Defendant with notice of the Underlying Litigation and that, in that timely notice, Plaintiff informed Defendant that Newmeyer & Dillion was acting as counsel. *See* Dkt. No. 63-4 at 75 (¶¶ 9-11) (Element); Dkt. No. 63-6 at 23 (Astoria). Plaintiff claims that it provided the proof of its payment and satisfaction of the applicable Retained Amounts sooner than Defendant alleges: April 2012 for Astoria, *see* Dkt. No. 63-6 at 35, and November 15, 2011 for Element, *see* Dkt. No. 63-3 at 90. Plaintiff contends that Defendant did not agree to defend the Astoria Litigation until November 2012, *see* Dkt. No 63-1 at 4 (¶ 20), and did not agree to defend the Element Litigation until April 2012, *see id.* at 5 (¶ 31). Plaintiff reports that Defendant made no payments on the Astoria Litigation until

April 2013 and did not provide a reservation of rights until October 2013. *See* Dkt. No. 63-1 at 3 (¶ 18). As for the Element Litigation, Plaintiff states that Defendant made no payments until April 2013 and did not provide a reservation of rights until April 2012. *See* Dkt. No. 63-1 at 6 (¶ 33); Dkt. No. 63-3 at 52-89. Plaintiff contends that Defendant has not made all payments required under the Policies and has improperly refused to let Plaintiff select its defense counsel.

Plaintiff brought this lawsuit against Defendant on January 10, 2013 in Texas state court. *See* Dkt. No. 1. The case was removed to this Court. Plaintiff asserts several causes of action, which Defendant denies. Defendant also brings counterclaims, including the declaratory judgment action on which it now seeks summary judgment.

### Legal Standards

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the

nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment,"*Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). The Court will not assume "in the absence of any proof ... that the

nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

Lexington moves for summary judgment on Count One of its counterclaims, which seeks declaratory judgment on the following three issues: (a) Defendant has the right to control the defense of Centex in the Astoria and Element Litigation; (b) Plaintiff is not entitled to the appointment of independent counsel under California Civil Code § 2860; and (c) Plaintiff breached its duty to cooperate under the Astoria Policy and Element Policy by refusing to acknowledge that Defendant had a right to control the defense and select counsel and by insisting that Defendant continue to pay Newmeyer & Dillion's fees and costs.

As an initial matter, the parties disagree as to whether California or Texas law applies to Defendant's declaratory judgment claims. Defendant argues that California law applies and that, under California Civil Code section 2860, Plaintiff was not entitled to independent counsel. *See* Dkt. No. 43; Dkt No. 67. Plaintiff contends that Texas law applies and that, under Texas law, Plaintiff was entitled to independent counsel. *See* Dkt. No. 61. Both parties argue that, even if the other jurisdiction's law applies, its position is correct.

Because the parties disagree on which law applies, and on whether the outcome under each law differs, the Court must first undertake a choice-of-law analysis. Once the choice-of-law analysis is complete, the Court will turn to whether summary judgment is appropriate on any of Defendant's declaratory judgment causes of action.

1.    **Texas Law Applies to Defendant's Declaratory Judgment Claims Regarding Right to Control and Selection of Independent Counsel.**

Before deciding which state's substantive law should control the issues raised by the parties here, "the Court must first determine which choice-of-law rules should be applied." *In re Soporex, Inc.*, 446 B.R. 750, 761 (Bankr. N.D. Tex. 2011). Here, both parties assert that Texas choice-of-law rules should determine the applicable laws in this case. *See* Dkt. No. 43 at 8-9; Dkt. No. 61 at 20-21.

Texas courts utilize the "most significant relationship" test to determine which state's law applies to a particular substantive issue. *See Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 n.2 (5th Cir. 2001) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)). This test is based on the *Restatement (Second) of Conflict of Laws* and utilizes a multi-factor methodology to determine which state has the most significant relationship to the substantive issues involved in a dispute. *See Duncan*, 665 S.W.2d at 421. Deciding which state's laws should govern an issue "is a question of law for the court to decide." *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000) (citing *Duncan*, 665 S.W.2d at 421); *see also McKinney BB v. U.S. Realty Advisors, LLC*, No. 01-11483, 2003 U.S. App. LEXIS 28011, at *18 (5th Cir. Jan. 24, 2003) ("[T]he question of which state's law to apply is a question of law."); *Janvey v. Suarez*, No. 3:10-cv-2581-N, 2013 WL 5663107, at *3 (N.D. Tex. Oct. 17, 2013). But this legal determination involves a factual inquiry. *See Hughes Wood Products*, 18 S.W.3d at 204; *Janvey*, 2013 WL 5663107, at *3. That is, "the party urging application of another state's substantive law [must] furnish the Court with 'sufficient information'

-9-

to establish that the law of another state applies." *Janvey v. Alguire*, 846 F. Supp. 2d 662, 671 (N.D. Tex. 2011) (quoting *Holden v. Capri Lighting, Inc.*, 960 S.W.2d 831, 833 (Tex. App. – Amarillo 1997, no pet.)) (internal quotations omitted). Absent such sufficient information, "'the failure to provide adequate proof of choice of law ... results in a presumption that the law of the foreign jurisdiction is identical to the law of Texas.'" *Id.* (quoting *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App. – Corpus Christi 1999, pet. denied)) (internal brackets omitted).

When two states' laws are substantially the same, this precludes the need to undertake a choice-of-law analysis. *See Lexxus Int'l, Inc. v. Loghry*, 512 F. Supp. 2d 647, 668 n.17 (N.D. Tex. 2007); *cf. Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 377–78 (Tex. App. – Fort Worth 2003, pet. denied) ("Before undertaking a choice of law analysis, we look to whether a conflict of law exists. If no conflict exists on the issues, we need not decide which state's laws govern."). Because no choice-of-law analysis would be required if California and Texas law were consistent on the issues, the Court must first determine if the laws of each jurisdiction differ with respect to (1) duty to defend, and by extension duty to control the defense, and (2) the independent counsel analysis.

### a.    Duty to Control the Defense.

Neither party appears to dispute the allegation that Defendant had a duty to defend the lawsuit, subject to Defendant's reservation of rights. *See* Dkt. No. 117 at 2-3. Under Texas law, once the insured has a duty to defend, included in that duty right is the right to control the defense and to select counsel. *See N. County Mut. Ins. Co. v.*

*Davalos*, 140 S.W.3d 685, 688 (Tex. 2004) (finding that an insurer's "right to defend" a lawsuit encompasses "the authority to select the attorney who will defend the claim and to make other decisions that would normally be vested in the insured as the named party in the case."). Similarly, under California law, if an insurer has a duty to defend, it may control the defense, including the selection of counsel. *See Safeco Ins. Co. of Am. v. Sup. Ct.*, 71 Cal. App. 4th 782, 787, 789-90 (Cal. Ct. App. 1999).

But Plaintiff contends that summary judgment is not warranted on Defendant's declaratory judgment count regarding duty to control because, at the least, there is a fact issue regarding whether Defendant breached its duty to defend by its unreasonable delay in accepting its duty to defend, paying Plaintiff's defense costs, and/or providing Defendant's coverage position with respect to the Underlying Litigation, *see* Dkt. No. 66 at 11-12, in which case Defendant had no right to control the defense or select counsel. The choice-of-law issue with respect to duty to defend, then, is whether Texas and California law are consistent with respect to what constitutes a breach of a duty to defend and whether a breach of a duty to defend forfeits the insured's right to control the defense.

Under California law, when the insured breaches its duty to defend, it forfeits its right to control the defense of the action or settlement. *See Intergulf Dev. v. Sup. Ct.*, 183 Cal. App. 4th 16, 20-21 (Cal. Ct. App. 2010). An insurer will breach its duty to defend where it unreasonably fails to provide benefits due under the policy, such as providing counsel. *See id.*; *Dynamic Concepts v. Truck Ins. Exch.*, 61 Cal. App. 4th 999, 1010 (Cal. Ct. App. 1998). Similarly, under Texas law, where a breach of the duty to

defend is caused by an unreasonable delay, the insurer forfeits its right to defend and, by extension, its right to select the counsel of its choosing. *See Kirby Co. v. Hartford Casualty Ins. Co.*, No. 3:02-cv-1616, 2004 WL 2165367, at *4 (N.D. Tex. Sept. 23, 2004) (citing *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir. 1983)). Thus, the laws of each jurisdiction are consistent on this issue, and Texas law will apply.

The next issue is whether each jurisdiction's law is the same with respect to when an exception to the insurer's right to select counsel exists.

### b.    Selection of Independent Counsel.

Under Texas law, the insurer with a duty to defend has a right to select the insured's counsel unless a conflict of interest exists. *See State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627-28 (Tex. 1998); *Rx.com Inc. v. Hartford Fire Ins. Co.*, 426 F. Supp. 2d 546, 559 (S.D. Tex. 2006). A reservation of rights letter may create a potential conflict, but the fact that an insurer issues a reservation of rights letter or provides a defense subject to a reservation of rights does not, standing alone, create a conflict that permits the insured to select its own counsel. *See Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 567 (S.D. Tex. 2012) ("[R]eservation of rights letters do not 'necessarily create a conflict between the insured and the insurer.' Rather, a reservation of rights letter 'only recognizes the possibility that such a conflict may arise in the future.'" (internal citations omitted)); *Davalos*, 140 S.W.3d at 689. To determine whether a conflict of interest exists, the Court must determine whether "the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends," and, if so, the conflict of interest will prevent the insurer from conducting the

-12-

defense. *Davalos*, 140 S.W.3d at 689. Thus, for a real conflict of interest to exist, it must be apparent that the facts on which coverage depends will be ruled on judicially in the underlying lawsuit. *See Partain*, 838 F. Supp. 2d at 567.

Under California law, an insurer may also select the insured's counsel unless a conflict of interest exists. *See* Cal. Civ. Code § 2860(a) ("If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless … the insured expressly waives, in writing, the right to independent counsel.").

Thus, under both Texas and California law, an insurer having the right to control the defense has the right to select the insured's defense counsel unless a conflict of interest exists. The only remaining issue is whether the conflict of interest standard is the same under California and Texas law.

According to California Civil Code § 2860(b), a conflict of interest may exist where an insurer has reserved its rights on an issue and the outcome of the coverage issue can be controlled by the counsel retained by the insurer. *See* Cal. Civ. Code § 2860(b). In California, as in Texas, merely tendering a reservation of rights does not create a conflict of interest warranting independent counsel. *See Park Townsend, LLC v. Clarendon Am. Ins. Co.*, No. 12-CV-04412, 2013 WL 3475176, at *8 (N.D. Cal. July 10, 2013). Likewise, the conflict of interest must be actual, not merely potential. *See Dynamic Concepts*, 61 Cal. App. 4th at 1007.

California courts, and the legislature, have provided several scenarios in which

-13-

an actual conflict of interest may exist. *See* CAL. CIV. CODE § 2860; *Gafcon, Inc. v. Ponsor & Assocs., Inc.*, 98 Cal. App. 4th 1388, 1421-22 (Cal. Ct. App. 2002); *Park Townsend*, 2013 WL 3475176, at *8. Included in those scenarios are two situations that might apply in the instant case: (1) the insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by the insurer's retained counsel, or (2) any other situation where an attorney who represents the interests of both the insurer and the insured finds that his or her representation of the one is rendered less effective by reasons of his or her representation of the other. *See Park Townsend*, 2013 WL 3475176, at *8.

While the language in Texas decisions describing an actual conflict of interest may be different from that found in Texas cases, the analysis is not. *Accord Rx.com Inc.*, 426 F. Supp. 2d at 559 ("A conflict of interest does not arise unless the outcome of the coverage issue can be controlled by counsel retained by the insurer for the defense of the underlying claim."). At bottom, California cases hold that, if the issues in the underlying lawsuit would also resolve the coverage issues, the counsel selected by the insurer might have reason to take a position that would undermine the insured's best position in the underlying lawsuit. One way to reach that conclusion is for a court to analyze whether the issue or issues related to the coverage dispute would be those that the court in the underlying litigation would adjudicate. *See Park Townsend*, 2013 WL 3475176, at *10 (analyzing whether the results of underlying lawsuit will disadvantage insured's position in the coverage dispute).

As such, the conflict of interest standard is essentially the same under both

-14-

Texas and California law. Having found that there is no difference in the two states' laws as it relates to this conflict of interest standard, Texas law will apply.

## 2. Summary Judgment is Not Warranted on Defendant's Declaratory Judgment Causes of Action.

Defendant seeks summary judgment on three counts for both the Astoria and Element causes of action. First, Defendant seeks a declaration that it has the right to control the defense of Centex in the Astoria and Element causes of action. Defendant also seeks a declaration that Plaintiff is not entitled to the appointment of independent counsel under California Civil Code § 2860. Finally, encompassing both of the first two declaratory judgment requests, Defendant seeks a declaration that Plaintiff breached its duty to cooperate under the Astoria Policy and Element Policy by refusing to acknowledge Defendant had a right to control the defense and select counsel and by insisting Defendant continue to pay Newmeyer & Dillion's fees and costs.

### a. Defendant's claim that it has the right to control the defense of Centex in the Astoria and Element causes of action.

Because the parties do not dispute the duty to defend, and by extension the right to control the defense, the only issue is whether there was a breach by Defendant that precluded it from exercising its right to control. If so, then no declaratory judgment claim is warranted. Plaintiff argues against summary judgment on the grounds that Defendant unjustifiably and unreasonably delayed in acknowledging its duty to defend, issuing its reservation of rights, and paying the applicable defense costs, thereby forfeiting its right to control the defense of the Underlying Litigation. *See* Dkt. No. 61 at 27-29.

Plaintiff relies primarily on the holding in *Kirby Co. v. Hartford Cas. Ins. Co.*, No. 3:02-cv-1616, 2004 WL 4528937 (N.D. Tex. Sept. 23, 2004), but the Court finds that the circumstances in the instant case are not as clear cut. The court in *Kirby* found that the evidence conclusively established that the insurer's delay was not warranted and was unreasonable. *See id.* at *3. Here, the parties have presented conflicting evidence regarding the extent of Defendant's delay in responding to Plaintiff's request for coverage; the reasons for any alleged delay, which bears on whether it was justified or excusable; and generally whether the length of any alleged delay was such that it constituted a breach. For instance, Defendant presents evidence that, pursuant to the terms of the Astoria and Element Policies, once it received evidence that Plaintiff had actually exhausted the Retained Amounts on the Astoria and Element Policies – meaning it received the invoices and evidence of payments made – it accepted defense of the actions, subject to a general reservation of rights. *See* Dkt. No. 67 at 17; Dkt. No. 43-1 at 141 & 194. But Plaintiff contends and presents evidence that it exhausted the Retained Amounts earlier than Defendant states and that Defendant delayed by an allegedly unreasonable amount of time in responding to Plaintiff's request for defense and payment of its defense costs. *See* Dkt. No. 61 at 27-29; Dkt. No. 63-6 at 35; 63-3 at 12, 83, & 90. Defendant claims that any alleged delay on its party was justified by Plaintiff's failure to provide the appropriate documents, *see* Dkt. No. 67 at 17-18.

Having a established a conflict of evidence exists, the Court must view all evidence of record in the light most favorable to Plaintiff. In doing so, the Court concludes that Defendant has failed to show that there is no genuine dispute as to any

material fact and that summary judgment is not warranted on Defendant's first declaratory judgment claim at this time.

The Court also notes that Plaintiff argues that, because Defendant stated in a deposition that, if Texas law applied, Plaintiff would have the right to control the defense, including its selection of counsel, summary judgment is inappropriate. *See* Dkt. No. 61 at 23. The Court is not denying summary judgment on the basis of this testimony alone. First, Defendant did not make such an explicit statement but rather said "it would likely be allowed." Dkt. No. 61 at 23. Second, Defendant clearly is not arguing as much and says so in its briefing. *See* Dkt. Nos. 43 & 67. This testimony does, however, lend support to a finding that a fact issue exists as to what Defendant believes and what the facts support.

Having reviewed the evidence of record, the Court finds nothing to support a finding that summary judgment is proper as a matter of law, and therefore Defendant's motion for summary judgment is DENIED as to this claim.

> **b.    Defendant's claim that Plaintiff is not entitled to the appointment of independent counsel under California Civil Code § 2860.**

As explained above, under Texas law, an insured is entitled to independently select his counsel in certain circumstances. But a reservation of rights letter alone does not necessarily create such circumstances. *See Partain*, 838 F. Supp. 2d at 567; *Davalos*, 140 S.W.3d at 689. Rather, it is only when "the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends" that a conflict of interest exists that prevents the insurer from conducting the defense. *Davalos*, 140

S.W.3d at 689. In other words, it must be apparent that the facts on which coverage depends will also be adjudicated in the underlying litigation. *See Partain*, 838 F. Supp. 2d at 567.

In the Astoria Litigation, the plaintiffs alleged four causes of action. *See* Dkt. No. 43-1 at 95-104. The plaintiffs first alleged that the construction violated several sections of California Civil Code § 896, a de facto building code defining the standards a structure must meet. *See* CAL. CIV. CODE § 896. The plaintiffs' allegations include the following violations: structural and other defects permitting unintended water to enter the structure; construction that does not meet government codes; electrical and mechanical systems defects causing unreasonable risk of fire; cracks that display significant vertical displacement or are excessive in the exterior of the building; roofing materials improperly installed; air conditioning not meeting California Code Regulations; dryer ducts improperly installed; and construction of structures in a manner so as to impair the occupants safety. *See* Dkt. No. 43-1 at 96-97. The plaintiffs further allege the defendants, including Plaintiff, made negligent misrepresentations regarding the building's components; regarding whether the structures had been properly inspected and met all applicable building codes; regarding whether all known defects had been disclosed and reserve budgets met certain standards; regarding whether the defendants anticipated a need for special assessments related to major components; and regarding whether any obligations could be properly discharged under the appropriate documents. *See id.* at 98. The plaintiffs also brought causes of action for breach of fiduciary duty for many of the same reasons on which their other

causes of action were based and for violating the Governing Documents of the sale. *See id.* at 100-103.

Defendant agreed to defend Plaintiff, subject to a reservation of rights. Defendant offered both a general and a specific reservation of rights. *See* Dkt. No. 63-3 at 13-16. The reservation of rights stated that "Lexington reserves the right to decline coverage for the claim to the extent that it does not constitute property damage as defined in the policy." Dkt. No. 63-3 at 14. While there are several more specific reservations of rights, the only one that Plaintiff indicates might conflict with the causes of action to be litigated in the Astoria Litigation is the reservation of rights for any coverage for certain "business risks." *See* Dkt. No. 61 at 25; Dkt. No. 63-3 at 15.

In the underlying Element Litigation, the plaintiffs asserted two causes of action in the second amended complaint. *See* Dkt. No. 63-5 at 1. The first cause of action again relates to violations of the California Civil Code building standards, including structural violations resulting in ongoing significant cracks in concrete foundations and exterior walls; unintended water and/or leaks and intrusion; violations in fire safety systems; and defects in the windows, doors, and component systems. *See* Dkt. No. 63-5 at 13-17. The plaintiffs also allege the defendants breached the fiduciary duty owed to the plaintiffs as a result of the alleged deficiencies and violations. *See id.* at 17-18.

Again, Defendant agreed to defend, subject to a reservation of rights. *See* Dkt. No. 43-1 at 197-204. In its reservation of rights, Defendant states that the Policy at issue does not cover "property damage ... arising out of ... a defect, deficiency, inadequacy, or danger condition in 'your product' or 'your work.'" Dkt. No. 61 at 25; 63-

3 at 56.

The Court cannot grant summary judgment on Defendant's declaratory judgment claim as requested because California law does not apply to the selection of independent counsel in this case. That said, after reviewing the current record, the Court does not find that summary judgment in Defendant's favor is proper at this juncture, even under Texas law. A review of the reservation of rights and the accompanying facts does not establish as a matter of law that any findings in the Underlying Litigation would not affect Defendant's coverage claims. Defendant argues that, because the construction causes of action are based upon strict liability – either the defects exist or they do not – and because other causes of action will make no findings of intent or on whether the claims constitute property damage caused by an occurrence, the results of the Underlying Litigation would have no bearing on coverage. *See* Dkt. No. 67 at 12-14.

In response, Plaintiff does not specifically point this Court to evidence of a conflict that absolutely exists or of Defendant's selected counsel's taking a position that is at odds with Plaintiff's favored course of action in the Underlying Litigation. Rather, Plaintiff presents arguments regarding, and evidence that, the findings in the Underlying Litigation could ultimately affect Plaintiff's coverage rights. *See* Dkt. No. 61 at 25. For instance, it could be that product defects or workmanship errors by other parties could exist in the Underlying Litigation, and the Court cannot determine, based on the record before it, whether it would behoove any party, in the Underlying Litigation or the coverage litigation, to focus blame on those entities or defects.

Plaintiff appears to indicate that any such decisions could create a conflict of interest. *See* Dkt. No. 61 at 25. Defendant has presented insufficient evidence that it is <u>not</u> planning to take any positions that might affect its coverage responsibilities.

Defendant did not present evidence that proves, as a matter of law, it would not be in its interest to take positions in the Underlying Litigation that might support its position regarding coverage. Viewing all facts and draw all reasonable inferences in the light most favorable to Plaintiff, the Court cannot, on this record or at this time, conclude that there is no genuine dispute as to any material fact and grant summary judgment in Defendant's favor on this declaratory judgment claim. As such, Defendant's motion for summary judgment on this claim is DENIED.

   **c.    Defendant's claim that Plaintiff breached its duty to cooperate under the Astoria Policy and Element Policy by refusing to acknowledge Defendant had a right to control the defense and select counsel and by insisting Defendant continue to pay Newmeyer & Dillion's fees and costs.**

Defendant's remaining request for summary judgment on its declaratory judgment counterclaim also fails. As the Court has found that summary judgment is proper on neither Defendant's right to control defense or Plaintiff's right (or lack thereof) to select independent counsel, a finding that Plaintiff breached its duty to cooperate under the Astoria Policy and Element Policy by refusing to acknowledge Defendant had a right to control the defense and select counsel and by insisting Defendant continue to pay Newmeyer & Dillion's fees and costs likewise cannot be made at this time. Neither party presents evidence to the contrary.

As such, Defendant has not shown that there is no genuine dispute as to any

material fact, and Defendant's motion for summary judgment on this declaratory judgment action is DENIED.

## Conclusion

Defendant's Motion for Partial Summary Judgment [Dkt. No. 43] is DENIED, and Plaintiff's motion to strike [Dkt. No. 68] is DENIED as moot.

SO ORDERED.

DATED: March 25, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE