IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CENTEX HOMES, a Nevada General Partnership, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:13-cv-719-BN |
| LEXINGTON INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S
PARTIAL MOTION FOR SUMMARY JUDGMENT,
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT,
DEFENDANT' S MOTION TO SUPPLEMENT, AND DEFENDANT'S
MOTION FOR RECONSIDERATION AND RELIEF FROM JUDGMENT**

This is a civil action related to an insurer's duty to defend and accompanying

obligations. *See* Dkt. No. 66. Plaintiff Centex Homes ("Plaintiff" or "Centex") filed a

Motion for Partial Summary Judgment on its Breach of Contract and Chapter 542

Claims ("Motion"). *See* Dkt. No. 74. Defendant Lexington Insurance Company

("Defendant" or "Lexington") filed its response and a cross-motion for summary

judgment ("Cross-Motion") on certain of Plaintiff's claims [Dkt. No. 86]. Plaintiff filed

a reply in support of its Motion and a response to Defendant's Cross-Motion [Dkt. No.

97], and Defendant filed a reply in support of its Cross-Motion [Dkt. No. 101]. Also

pending is Defendant's Motion for Leave to File Supplemental Brief in Support [Dkt.

No. 100] of its Cross-Motion. Plaintiff filed a response [Dkt. No. 112], and Defendant

filed a reply [Dkt. No. 114]. Defendant also filed a Motion for Reconsideration [Dkt. No.

137].

For the reasons explained below, Plaintiff's Motion for Partial Summary Judgment on its Breach of Contract and Chapter 542 Claims [Dkt. No. 74] is DENIED, Defendant's Cross-Motion [Dkt. No. 86] is DENIED in part and GRANTED in part, and Defendant's Motion for Reconsideration [Dkt. No. 137] is DENIED. As to Defendant's Motion for Leave [Dkt. No. 100], because the Court did not consider the evidence at issue in reaching its decision, the motion is DENIED as moot.

## Factual Background and Allegations

Plaintiff asserts causes of action for breach of contract and violations of Chapters 541 and 542 of the Texas Insurance Code. See Dkt. No. 66 at 11-13. In its Motion, Plaintiff moves for summary judgment on its breach of contract and Chapter 542 claims and also seeks attorneys' fees and pre-judgment interest. *See* Dkt. No. 75.

This case involves a coverage dispute between an insured and insurer. Plaintiff is primarily in the business of designing, developing, and constructing condominiums and other housing complexes throughout the country. *See* Dkt. No. 66 at 2. In constructing these condominium projects, Plaintiff purchases "wrap" insurance policies that cover Plaintiff as a general contractor and all subcontractors performing work in connection with the insured project. *See id.* at 3. Plaintiff purchased five such wrap policies from Defendant.

The summary judgment evidence – when all facts are viewed and all reasonable inferences are drawn in the light most favorable to the non-moving party and when all disputed factual controversies are resolved in the non-moving party's favor – shows the

following regarding each of the policies for purposes of resolving the pending motions for summary judgment.

1.    <u>The Astoria Policy</u>

Defendant issued Commercial General Liability Residential Wrap-up Policy No. 4142193 to Plaintiff as a general contractor and all subcontractors performing work in connection with the Astoria Property located in Sacramento, California (the "Astoria Policy"). *See* Dkt. No. 78-1 at 2 (¶¶ 5, 8). Under the Astoria Policy, there is an "each occurrence" limit of $5,000,000 and a "Retained Amount" of $150,000 for "each occurrence." *See* Dkt. No. 78-1 at 25. In other words, Defendant is not obligated to make any payments under the Astoria Policy until Plaintiff has reached its Retained Amount of $150,000. The Astoria Policy also mandated a "Joint Defense Approach," which reflects that the named insured would cooperate with Defendant in connection with the investigation, defense, and resolution of any occurrence, offense, claim, or suit under the Policy. *See* Dkt. No. 78-1 at 27. Some of the relevant Astoria Policy provisions are as follows:

- Under the joint defense provisions of this policy, each Named Insured shall have the obligation, as a condition of coverage, to cooperate with us in connection with the investigation, defense and/or resolution of any "occurrence", offense, claim or "suit".

- We do not have the duty to investigate or defend any "occurrence", offense, claim or "suit" unless and until the Retained Amount is exhausted with respect to that "occurrence", offense, claim or "suit" that may result.

*Id.*

In February 2011, members of the Astoria Owners' Association filed suit in

California against Plaintiff ("Astoria Litigation") for several causes of action, including construction defects. *See* Dkt. No. 43-1 at 85. Plaintiff and Defendant offer different accounts as to what transpired after the Astoria Litigation was filed, as detailed below.

Plaintiff notified Defendant on April 16, 2012 that the Retained Amount would be exceeded, and, on that date, Plaintiff sent a summary of invoices and amounts but did not include evidence of payment. *See* Dkt. No. 78-8 at 28-34. Defendant does not contest that it received notice of exhaustion on that date but instead says that it did not receive the necessary supporting documentation until December 6, 2012, despite having requested it on several different occasions. *See* Dkt. No. 78-8 at 81; Dkt. No. 78-8 at 43. On that date and upon receiving the documents, Defendant informed Plaintiff that it accepted that the Retained Amount had been met and said that its reservation of rights would be forthcoming. *See* Dkt. No. 78-4 at 1. On April 11, 2013, Defendant issued a check related to the Astoria fees for $95,757.11. Dkt. No. 78-4 at 12. Defendant did not provide its detailed reservation of rights, however, until October 4, 2013. *See* Dkt. No. 78-4 at 13.

In sum, Plaintiff claims that Defendant did not provide payment until a year after being notified that the Retained Amount was exhausted and did not provide a reservation of rights for almost 18 months. Defendant claims that Plaintiff exaggerates any delay in providing these things and that any alleged delay was caused by Plaintiff's conduct.

The parties also dispute the timing of when Defendant provided Plaintiff with notice that Defendant did not agree to the use of the law firm Newmeyer & Dillon

("N&D") as Plaintiff's counsel. Plaintiff contends that it was not informed that Defendant would not accept N&D as counsel until the December 6, 2012 email informing Plaintiff that Defendant accepted satisfaction of the Retained Amount and requesting that the file be sent to the newly-selected law firm. *See* Dkt. No. 88-4 at 13. Defendant contends, however, that it informed Plaintiff that N&D would not be acceptable counsel several years before that. *See* Dkt. No. 88-4 at 9-14 & 22. That said, it appears that Defendant and N&D communicated regarding the status of the case and that Defendant was involved in the pre-litigation process, *see* Dkt. No. 88-5 at 1-3; Dkt. No. 88-3 at 1-7, and Defendant has not presented any evidence that it indicated N&D would not be acceptable counsel between initially stating so in its "Claim Account Instructions" and the December 6, 2012 communication.

With respect to payment, Defendant made a payment of $95,757.11 on April 11, 2013. *See* Dkt. No. 78-4 at 12. Plaintiff states that no further payments have been made to Plaintiff's defense costs. *See* Dkt. No. 75 at 13. Defendant states that, as of the filing of its Response, it had paid approximately $127,982 in defense costs and that payments are ongoing, but Defendant cites only to its affidavit and not to any proof of payment to support its position. *See* Dkt. No. 87 at 8.

2.   The Element Policy

Defendant issued Commercial General Liability Residential Wrap-up Policy No. 1323344 to Plaintiff as a general contractor and all subcontractors performing work in connection with the Element Property located in San Diego, California (the "Element Policy"). *See* Dkt. No. 78-1 at 2 (¶¶ 5, 9). Under the Element Policy, there is an "each

occurrence" limit of $5,000,000 and a "Retained Amount" of $500,000 for "each occurrence." *See* Dkt. No. 78-2 at 2. In other words, Defendant is not obligated to make any payments under the Element Policy until Plaintiff has reached its Retained Amount of $500,000. The Element Policy mandated a "Joint Defense Approach," which reflects that the named insured would cooperate with Defendant in connection with the investigation, defense, and resolution of any occurrence, offense, claim, or suit under the Policy. *See* 78-2 at 18. Some of the relevant Element Policy provisions are as follows:

- Under the joint defense provisions of this policy, each Named Insured shall have the obligation, as a condition of coverage, to cooperate with us in connection with the investigation, defense and/or resolution of any "occurrence", offense, claim or "suit".

- We do not have the duty to investigate or defend any "occurrence", offense, claim or "suit" unless and until the Retained Amount is exhausted with respect to that "occurrence", offense, claim or "suit" that may result.

*Id.*

In April 2009, members of the Element Homeowners' Association filed suit in California against Plaintiff (the "Element Litigation") for several causes of action, including construction defects. *See id.* at 4; Dkt. No. 63-5 at 1 (Second Amended Complaint in the Element Litigation). Plaintiff and Defendant offer different accounts as to what transpired after the Element Litigation was filed, as detailed below.

Plaintiff notified Defendant on November 15, 2011 that the Retained Amount had been, or would soon be, satisfied. *See* Dkt. No. 78-6 at 8. Interestingly, Plaintiff claims in both its Motion and Appendix that the following day – November 16, 2011 –

it sent the N&D invoices that had been issued through November 15, 2011, but Defendant claims that the invoices were not attached. *See id.* at 14. The letter in the Appendix also does not contain the invoices. *See id.* Plaintiff nonetheless claims that this demonstrates that Defendant had notice that Plaintiff exhausted the Retained Amount at that point but failed to issue its cover position until April 2, 2012, nearly five months later. *See* Dkt. No. 75 at 14. Despite Plaintiff's making this claim, an email from Plaintiff to Defendant states that notice of exhaustion of the Retained Amount was not given to Defendant until March 8, 2012, *see* Dkt. No. 78-4 at 10, and the November 15, 2011 communication from N&D states that N&D still must confirm that the Retained Amount had been satisfied, *see* Dkt. No. 78-6 at 8.

Plaintiff's evidence shows that, as of March 9, 2012, Defendant was still seeking evidence and information to support Plaintiff's claims that the Retained Amount had been met. *See* Dkt. No. 78-6 at 14. A March 8, 2012 communication also seems to indicate that the Retained Amount had not yet been met and that $22,953.18 was left on the retention amount. *See id.* at 15. Defendant's evidence contains communications from June 2012 in which Defendant is still asking for documentation to support Plaintiff's claim that the Retained Amount had been exhausted. *See* Dkt. No. 88-3 at 27-28. Plaintiff responded in early July, indicating that it had previously sent all requested documents but that it was re-sending the documents as well as a set of invoices for defense fees and costs via CD Rom. *See* Dkt. No. 88-3 at 29. Defendant contends that the evidence demonstrates it did not receive evidence supporting the Retained Amount had been met until October 2012 and that therefore any claim that

Defendant delayed in its duty to defend for 250-plus days is unfounded. *See* Dkt. No. 88-4 at 4.

Defendant provided a reservation of rights on April 2, 2012, though Plaintiff contests whether this reservation of rights accepted the defense of the Element Litigation. *See* Dkt. No. 78-4 at 10. Defendant issued its first payment toward Plaintiff's Element Litigation defense on April 3, 2013. *See* Dkt. No. 78-4 at 82.

Plaintiff contends that Defendant did not inform Plaintiff of its desire to replace N&D until November 2012, when the Element Litigation had been pending for more than four years. *See* Dkt. No. 75 at 24; Dkt. No. 88-4 at 1. The summary judgment evidence demonstrates that, during Defendant's investigation as to whether the Retained Amount had been exhausted, counsel at N&D was communicating with Defendant, providing updates on the course and strategy of the litigation. *See* Dkt. No. 88-3 at 1-7; Dkt. No. 88-5 at 1. There does not seem to be any evidence that Defendant voiced any concern over N&D as Plaintiff's liability counsel until November 2012. Plaintiff formally responded in January 2013, stating that it would not accept the change in defense counsel at such a late date and with such a delayed notification and stating its position regarding Defendant's breach of its duty to defend. *See* Dkt. No. 88-5 at 1-3.

Notably, the mention of independent, or *Cumis*, counsel was not raised until November 30, 2012, and it was raised by Defendant, telling Plaintiff that, if Plaintiff "believe[d] the situation warrants Cumis counsel," "please submit that request in writing." Dkt. No. 88-4 at 4. Plaintiff did not submit evidence of a response. And no

document in the summary judgment record that predates that communication mentioned a conflict of interest warranting independent counsel or claim that independent counsel was necessary. In its January 2013 response letter, Plaintiff sets forth many of its arguments regarding Defendant's alleged breach of its duty to defend but still does not mention the need for independent counsel due to a conflict of interest. *See* Dkt. No. 88-5 at 1-3.

Defendant contends that, as of January 9, 2014, it had paid approximately $381,933 in defense costs related to the Element Litigation and that payments are ongoing. *See* Dkt. No. 88-1 at 2. Plaintiff's evidence demonstrates that payments were made in September 2013 totaling approximately $212,000.00 to N&D. *See* Dkt. No. 78-8 at 15-19.

3.    The Legacy Villas Policies

Defendant issued Commercial General Liability Residential Wrap-up Policy No. 1323359 to Plaintiff as a general contractor and all subcontractors performing work in connection with the Legacy Villas Phase I and Commercial General Liability Residential Wrap-up Policy No. 1125736 to Plaintiff as a general contractor and all subcontractors performing work in connection with Legacy Villas Phases II and III (collectively, "Legacy Villas Policies"). Under the Legacy Villas Phase I Policy, there is an "each occurrence" limit of $5,000,000 and a "Retained Amount" of $500,000 for "each occurrence," *see* Dkt. No. 78-2 at 39, and, under the Legacy Villas Phase II and III Policies, there is an "each occurrence" limit of $10,000,000 and a "Retained Amount" of $250,000 for "each occurrence," *see* Dkt. No. 78-3 at 2. In other words, Defendant is

not obligated to make any payments under the Legacy Villas Phase I Policy until Plaintiff has reached its Retained Amount of $500,000 or under the Legacy Villas Phase II and III Policies until Plaintiff has reached its Retained Amount of $250,000. The Legacy Villas Policies mandated a "Joint Defense Approach," which reflects that the named insured would cooperate with Defendant in connection with the investigation, defense, and resolution of any occurrence, offense, claim, or suit under the Policy. *See* 78-3 at 56. Some of the relevant Legacy Villas Policies provisions are as follows:

- Under the joint defense provisions of this policy, each Named Insured shall have the obligation, as a condition of coverage, to cooperate with us in connection with the investigation, defense and/or resolution of any "occurrence", offense, claim or "suit".

- We do not have the duty to investigate or defend any "occurrence", offense, claim or "suit" unless and until the Retained Amount is exhausted with respect to that "occurrence", offense, claim or "suit" that may result.

Dkt. No. 78-2 at 54; Dkt. No. 78-3 at 18.

Between 2009 and 2010, the Legacy Villas at La Quinta Homeowners Association asserted claims and filed suit against Plaintiff complaining of alleged construction defects (the "Legacy Villas Litigation"). Dkt. No. 78-1 at 8. Unique to the Legacy Villas Litigation, in October 2012, Plaintiff filed an arbitration proceeding against Defendant to determine whether the Legacy Villas Litigation implicated multiple occurrences so that multiple Retained Amounts had to be exhausted and whether payments made by third-party insurers went toward the exhaustion of the Retained Amount. *See* Dkt. No. 78-5 at 1-8. On February 18, 2013, the arbitration panel

found in Plaintiff's favor on both issues, holding that only one Retained Amount was required to be exhausted and that third-party insurer payments went toward the exhaustion of the Retained Amount. *See* Dkt. No. 78-5 at 86-89.

Before and during the arbitration proceeding, the parties continued to dispute whether the Retained Amount requirement had been satisfied. Plaintiff notified Defendant that the Retained Amount had been met on the Legacy Villas Phase II and III Policies on September 20, 2010. *See* Dkt. No. 78-8 at 20-21. But Defendant did not agree. On November 8, 2011, Defendant issued its reservation of rights and informed Plaintiff that Defendant did not believe the Retained Amounts had been satisfied as to the Legacy Villas Policies, at least in part, because there were multiple occurrences, meaning that multiple Retained Amounts were required to be exhausted. *See* Dkt. No. 78-4 at 97, 101. As late as November 2012, Defendant was still seeking additional information demonstrating exhaustion, though Plaintiff claimed that it had already provided the requested documentation. *See* Dkt. No. 88-5 at 4-10. On November 15, 2012, subject to its position that the Retained Amounts had not been met, Defendant agreed to provide a defense and make certain payments related to the Legacy Villas Litigation defense costs. *See* Dkt. No. 78-5 at 90-91.

Defendant made its first defense cost payments in January 2013, which Defendant contends is when its duty became due but which Plaintiff contends constitutes an unreasonable delay. *See* Dkt. No. 78-5 at 92; Dkt. No. 78-8 at 44-48. Plaintiff contends that Defendant owes $345,110.54 in unpaid defense costs incurred with the Legacy Villas Litigation. *See* Dkt. No. 75 at 17. Defendant states that, up to

January 2014, it had paid approximately $509,414 in defense costs related to the Legacy Villas Phase I Policy and approximately $1,085,096 in defense costs related to the Legacy Villas Phase II and II Policies.

4.   <u>The Bay Villas Policy</u>

Defendant issued Commercial General Liability Residential Wrap-up Policy No. 2950987 to Plaintiff as a general contractor and all subcontractors performing work in connection with the Bay Villas Property located in Galveston Island, Texas (the "Bay Villas Policy"). *See* Dkt. No. 78-1 at 2 (¶¶ 12); Dkt. No. 78-3 at 40. (The property is identified as Pointe West Project on the Policy, but the parties refer to it as the Bay Villas project.) Under the Bay Villas Policy, there is an "each occurrence" limit of $10,000,000 and a "Retained Amount" of $500,000 for "each occurrence." *See* Dkt. No. 78-3 at 40. In other words, Defendant is not obligated to make any payments under the Bay Villas Policy until Plaintiff has reached its Retained Amount of $500,000. The Bay Villas Policy mandated a "Joint Defense Approach," which reflects that the named insured would cooperate with Defendant in connection with the investigation, defense, and resolution of any occurrence, offense, claim, or suit under the Policy. *See* Dkt. No. 78-3 at 56. Some of the relevant Bay Villas Policy provisions are as follows:

- Under the joint defense provisions of this policy, each Named Insured shall have the obligation, as a condition of coverage, to cooperate with us in connection with the investigation, defense and/or resolution of any "occurrence", offense, claim or "suit".

- We do not have the duty to investigate or defend any "occurrence", offense, claim or "suit" unless and until the Retained Amount is exhausted with respect to that "occurrence", offense, claim or "suit" that may result.

*Id.*

In September 2010, the Bay Water and Villas at Pointe West Homeowners' Associations brought construction defect suits against Plaintiff and others, and the suits were later consolidated into one action (the "Bay Villas Litigation"). *See* Dkt. No. 78-1 at 7. The Bay Villas Litigation includes claims against Plaintiff for negligence, breach of contract, express breach of warranty, breach of implied warranty of good and workmanlike services, and several other causes of action. *See* Dkt. No. 78-4 at 86. Plaintiff and Defendant offer different accounts as to what transpired after the Bay Villas Litigation was filed, as detailed below.

Plaintiff claims that it notified Defendant that Plaintiff had exhausted the Retained Amount on May 2, 2012, and that it provided documentation the following day. *See* Dkt. No. 75 at 15; Dkt. No. 78-8 at 23. Defendant contends that, while it may have received notice on May 2, 2012 that the Retained Amount had been met, it received no documentation of exhaustion until August 2012. *See* Dkt. No. 78-8 at 80; Dkt. No. 87 at 9. Defendant issued its reservation of rights on August 28, 2012, and Plaintiff claims to have received it on September 4, 2012. *See* Dkt. No. 78-1 at 7; Dkt. No. 78-4 at 84-88. In the August 2012 letter, Defendant states that, while it understands Plaintiff claims to have exhausted the Retained Amount, Defendant needs evidence – fee statements, invoices, proof of payment – demonstrating that the Retained Amount was met. *See* Dkt. No. 78-4 at 86. While certain deposition testimony supports the contention that Defendant received the requested supporting documentation in August 2012, later communications seem to indicate that Defendant

-13-

had not yet received the requested information as of October 2012. *See* Dkt. No. 88-6 at 12. But Defendant made its first payment toward the Bay Villas Litigation defense costs in the same month that Defendant received evidence supporting exhaustion. *See* Dkt. No. 87 at 9.

Defendant explained that any alleged delay in its duty to defend that is not attributable to Plaintiff's lack of cooperation might be explained by internal staff turnover. *See* Dkt. No. 78-8 at 75. That said, deposition testimony also indicates that it is Defendant's general policy to issue a reservation of rights as soon as the company has enough information to do so. *See id.* at 77.

Plaintiff contends that, through September 2013, Defendant owes $402,550.94 in defense costs related to the Bay Villas Litigation and Policy. *See* Dkt. No. 78-1 at 8. Defendant claims to have paid approximately $784,975 in defense costs, with the payments ongoing. *See* Dkt. No. 87 at 9.

## Legal Standards

1. <u>Motion for Summary Judgment</u>

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment,"*Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue,"

-15-

"the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th

Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

2.    <u>Motion to Reconsider</u>

A motions for reconsideration is made pursuant to Federal Rule of Civil Procedure 59(e), which allows a motion to alter or amend a judgment. *See Patin v. Allied Signal, Inc.*, 77 F.3d 782, 785 n.1 (5th Cir. 1996). The Court has considerable discretion when deciding such a motion, the narrow purpose of which is to allow a party to correct manifest errors of law or fact or present newly discovered evidence. *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989); *Montfort Square Shopping Center, Ltd. v. Goodyear Tire & Rubber Co.*, No. 3:10-cv-1673-D, 2012 WL 3870625, at *1 n.1 (N.D. Tex. Sept. 6, 2012). Motions for reconsideration cannot be used to raise arguments that could have been made before or to re-urge matters that have already been advanced by a party. *See Waltman*, 875 F.2d at 473-74.

## Analysis

Plaintiff moves for summary judgment on its breach of contract claims and on its Chapter 542 claims. As an initial matter, the parties do not agree on the law that applies. Defendant contends that all claims are governed by California law, while Plaintiff contends Texas law applies.

The Court previously addressed which law applied with respect to certain rights under the duty to defend, including what constitutes a breach of the duty to defend, a breach of a duty to cooperate, and the right to select independent counsel. *See* Dkt.

-17-

Nos. 125 & 126. Defendant filed a motion to reconsider certain of the Court's choice-of-law rulings – specifically, those rulings that determine that Texas law applies. *See* Dkt. No. 137. In its Cross-Motion, Defendant also raises novel choice-of-law arguments.

While the parties agree that Texas law applies to all Bay Villas Litigation claims, they dispute whether Texas or California law applies to the Astoria, Element, and Legacy Villas Policies. As such, the Court must first determine what law applies.

1.    Choice of Law

Defendant filed a motion for reconsideration regarding this Court's conflict-of-law determination in its Order on Defendant's Motion for Partial Summary Judgment Regarding Right to Control Defense [Dkt. No. 126]. *See* Dkt. No. 137. Novel issues were raised in the summary judgment motions now being considered, which were filed before the initial orders addressing the conflict-of-law issues, including the evidentiary standard necessary to prove a breach of a duty to defend and the applicability of Texas Insurance Code Article 21.42. All other conflict-of-law arguments raised in the parties' summary judgment briefings are not novel and will not be addressed, except to the extent that they are included, by default, in the consideration of Defendant's motion for reconsideration.

A.    *Defendant's Motion for Reconsideration*

Defendant argues that the conflict-of-laws rulings made in the Court's Order on Defendant's Motion for Partial Summary Judgment Regarding Right to Control Defendant ("Order on Right to Control MSJ") [Dkt. No. 126] are inconsistent with the Court's conflict-of-law's determination in its order on Plaintiff's Motion to Dismiss

Defendant's Counterclaims ("Order on Plaintiff's MTD") [Dkt. No. 125] and that therefore the Court should amend its prior determinations. The Court disagrees.

Defendant argues that this Court "found that California law applies to substantive issues in contract" or, in other words, that "California insurance law governs the contracts at issue" in its Order on Plaintiff's MTD. Dkt. No. 137 at 2. But, as the Order on Plaintiff's MTD states, the Court was only determining whether Defendant's affirmative cause of actions for breach of contract and breach of the implied covenant of good faith and fair dealing could stand as affirmative causes of action. *See* Dkt. No. 125 at 11. And, after analyzing Texas and California law, the Court concluded that "California law applies to Defendant's counterclaims." *See id.* at 16. Thus, contrary to Defendant's claims, the Court was not concluding that California law applied to the contracts claims or to all claims for breach of the contracts.

Defendant's next contention – that the two holdings were inconsistent because the Court found that California law applies to the contracts as a whole but Texas law applies to the specific contractual provisions – is incorrect, as explained above. But, even if that contention were correct, Defendant points to no case law to support a rule prohibiting a ruling that California law might apply to one cause of action while Texas law applies to another cause of action. As has been noted by courts in this district, it is possible that the requisite elements of a claim might be the same under the law of each jurisdiction but that the necessary factors or evidence to be considered when making a determination may differ. *See Berry v. Indianapolis Life Ins. Co.*, No. 3:08-cv-248-B, 2009 WL 804163, at *14-15 (N.D. Tex. Mar. 26, 2009). It is possible that certain

aspects of Plaintiff's – or Defendant's – claims might warrant the application of Texas law while other aspects do not, which might result in the application of different law to the various claims. While confusing, nothing indicates that this is a prohibited result. For all of these reasons, the Court will not reverse its prior decision on this ground.

Defendant next argues that "the determination that there is no conflict between Texas and California law overlooks California law stating that an insurer is justified in delaying its duty to defend, and therefore does not breach its duty, when the insured fails to provide necessary information." Dkt. No. 137 at 3. Because Defendant contends no such law exists in Texas, Defendant asserts that California law and Texas law differ with respect to whether an insurer breached its duty to defend. *See id.* at 8.

In the Order on Right to Control MSJ, the Court examined "whether Texas and California law are consistent with respect to what constitutes a breach of duty to defend and whether a breach of duty to defend forfeits the insured's right to control the defense." Dkt. No. 126 at 11. The Court concluded that, under both Texas and California law, an insurer breaches its duty to defend "where it unreasonably fails to provide benefits due under the policy" or "unreasonably delays" in its duty to defend. *Id.* at 11-12.

According to Defendant, the Court was correct to conclude that "under California law the insurer who breaches its duty to defend forfeits its right to select defense counsel" but erred by failing to consider the accompanying rule that "the insurer does not breach its duty to defend, retaining its right to select defense counsel, if the insured

delays in providing necessary information," because Texas does not recognize this rule. *See* Dkt. No. 137 at 3. In other words, Defendant argues that the Court should have further analyzed what causes, or excuses, a breach of a duty to defend and that, had such an analysis been performed, a conflict would have been discovered.

While this issue likely could have been raised in its prior briefing, the Court will now consider this argument because it might fit within the narrow purpose of a motion to reconsider: to correct manifest errors of law or fact or present newly discovered evidence. *See Waltman*, 875 F.2d at 473; *Montfort Square Shopping Ctr., Ltd.*, 2012 WL 3870625 at *1 n.1. The Court must now determine whether a conflict exists between Texas and California law with respect to whether an insurer's delay in providing a defense would be excused if the delay were caused by an insured's failure to provide requested and necessary information.

While the language of the law in both states is somewhat unique, there is one common theme running through both states' law – whether the insurer's delay was reasonable, or unreasonable, as it may be. Defendant contends that nowhere in Texas law will one find the proposition that an insurer's delay is excused by an insured's failure to cooperate or by an insurer's investigation of coverage. *See* Dkt. No. 137 at 9.

In *Kirby Co. v. Hartford Casualty Ins. Co.,* No. 3:02-cv-1616-L, 2004 WL 2165367 (N.D. Tex. Sept. 23, 2004), the court evaluated whether the insurer's alleged investigation of claim coverage made any delay in tendering a defense reasonable. *See id.* at *3-*4. While the court ultimately found that the delay was unreasonable because no evidence supported the length or the necessity of the investigation, the insurer's

arguments were not rejected because such a proposition is not valid in Texas law but rather because the facts did not support its claims. *Id.*

Under California law, the initial duty to defend law is virtually identical to that found in Texas – an insurer has an immediate duty to defend the claims entirely, if any claims are at least potentially covered. *See* Dkt. No. 126 at 10-11; *see also Travelers Prop. v. Centex Homes*, No. C 10-02757, 2011 WL 12258982, at *3 (N.D. Cal. Apr. 1, 2011) ("*Centex I*"). That said, if the insured fails to promptly provide the reasonable, requested information to facilitate an insurer's investigation related to whether a duty to defend exists, a delay in providing the defense is excused. *See Centex I*, 2011 WL 1225982 at *4. *But see Travelers Prop. Casualty Co. of Am. v. Centex Homes*, No. 11-3638-SC, 2012 WL 1657121, at *5 (N.D. Cal. May 10, 2012) ("*Centex II*"). If a delay is excused by the insured's conduct and the insurer provides a defense after the investigation, a finding of breach is generally not warranted. *See Centex I*, 2011 WL 12258982, at *4. As discussed more fully below, a finding of breach is only warranted where the insurer shows that it suffered substantial prejudice from the insured's breach. *See Century Sur. Co. v. 350 W.A., LLC*, No. 05-CV-1548, 2011 WL 4506981, at *7 (S.D. Cal. Sept. 29, 2011).

The Court recognizes that there may be slight differences in the wording of the standards and the extent to which California courts have had the opportunity to evaluate evidence. None of these cases, however, indicate a difference in the substance of the two laws. *See Robbins Hardwood Flooring, Inc. v. Bolick Distributors, Corp.*, No. 3:02-cv-1124-H, 2003 WL 21730142, at *2 (N.D. Tex. Mar. 18, 2003) (finding no

difference in the substance of the laws of two states and no conflict of law where the application of Texas law incorporated all of the elements required under Louisiana law, as well as required proof of an additional element). While Plaintiff has not presented a case with the exact scenario presented in *Centex I* – or the facts of the instant case – Defendant has put forth no law to indicate that this law or rule has been rejected by a Texas court or that the law is otherwise contrary in Texas. And, under Texas law, the insured's actions are considered when a court evaluates whether an alleged breach of a duty to defend transpired. *See Kirby Co.,* 2004 WL 2165367 at *3-4.

Based on the case law before the Court, the Court cannot conclude that a true conflict of law exists or that the difference between the law of two jurisdictions, on this point, is such that the outcome would be different. *See Flagship Credit Corp. v. Indian Harbor Ins. Co.*, 481 F. App'x 907, 910 (5th Cir. 2012) (stating that a true conflict-of-law exists if the conflict is such that it "actually affects the outcome of an issue"); *Berry*, 2009 WL 804163 at *14-15 (finding a conflict of law where "the potentially applicable law of California is inconsistent enough with Texas law to potentially alter the outcome of the Court's resolution of the pending motions"). As such, the Court will not reverse its prior rulings on this grounds and denies Defendant's motion to reconsider.

### B.     *Defendant's Cross-Motion for Summary Judgment*

In its pending cross-motion for summary judgment, Defendant contends that the proof required to prevail on a noncooperation claim differs in each jurisdiction, creating a conflict of law that requires a choice-of-law analysis. Defendant claims that the law

in each jurisdiction differs with respect to "the degree of proof required for [Defendant] to prevail on its defense of noncooperation." Dkt. No. 101. This argument was not presented in Defendant's prior briefing.

Having reviewed the arguments and case law, the Court concludes that the issue presented is not a clear-cut situation wherein the law of the two jurisdictions conflicts. Rather, Texas does not appear to have addressed the issue presented by Defendant. Defendant claims that, under California law, prejudice can be proved as a matter of law and that Texas's law is to the contrary. More specifically, Defendant contends that substantial prejudice "can be shown as a matter of law if the insured rejects panel counsel," whereas, under Texas law, the insurer must demonstrate actual prejudice, even if the insured rejects the chosen counsel. Dkt. No. 87 at 14.

The decision on which Defendant relies do not seem to indicate that the law is quite as clear-cut as Defendant suggests. For instance, while Defendant relies on *Cybernet Ventures, Inc. v. Hartford Ins. Co. of the Midwest*, 168 F. App'x 850, 852 (9th Cir. 2006), to support its proposition that prejudice can be inherent under the circumstances in the instant case, *see* Dkt. No. 101 at 8, the case on which *Cybernet* relied does not make such a proclamation. *See Truck Ins. Exch. v. Unigard Ins. Co.*, 79 Cal. App. 4th 966, 523 (Cal. App. 2000) (stating only that, "where an insured violates a cooperation clause, the insurer's performance is excused if its ability to provide a defense has been substantially prejudiced."). It is worth noting that *Cybernet* is an unpublished Ninth Circuit opinion from before 2007, which means that it is not binding precedent. *See* 9TH CIR. R. 36-3. Moreover, in *Centex I*, the court found that "prejudice

-24-

inherently existed when [the insured] refused [the insurer's] choice of counsel" <u>under the facts of the case</u>. *Centex I*, 2011 WL 1225982 at *7. The court also explained that there are limited circumstances where prejudice may be presumed – where it "naturally, inherently and necessarily exist[s]" – but limited its holding of presumed prejudice to "the facts [in those cases]." *Id.*; *see also Hall v. Travelers Ins. Cos.*, 15 Cal. App. 3d 304, 308-09 (Cal. App. 1971) (finding that there was "substantial evidence" to support the finding that the insured breached the cooperation clause). In finding prejudice as a matter of law, later cases have also noted that it is the factual circumstance that constitute a finding of prejudice as a matter of law. *See Century Sur.*, 2011 WL 4506981 at *8.

Texas courts require actual prejudice but have not directly addressed the issue raised by Defendant. Nor have Texas courts directly rejected the rule or ruled to the contrary.

But Defendant points to several cases that it claims support its proposition that, under Texas law, the insurer must demonstrate "actual prejudice" to prevail on a defense of noncooperation. *See* Dkt. No. 101 at 8. As an initial matter, virtually all of the decisions on which Defendant relies involve notice provisions and accompanying scenarios in which the insured failed to properly provide notice of the claims against it so that the insurer could defend the case. *See* Dkt. No. 101 (citing *Clarendon Nat'l Ins. Co. v. FFE Transp. Servs., Inc.*, 176 F. App'x 559, 562 (5th Cir. 2006) (per curium); *Member Ins. Co. v. Branscum*, 803 S.W.2d 462, 467 (Tex. App.–Dallas 1991, no pet);

*Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, 690 F.3d 342, 348 (5th Cir. 2010)). They do not involve a cooperation clause or duty.

There are cases where this has been addressed briefly, however, and, in those cases, no black-letter rule was established. Instead, the courts held only that the insurer had to prove that a failure to cooperate prejudiced the insurer without addressing when and if prejudice occurs as a matter of law. *See Struna v. Concord Ins. Servs., Inc.*, 11 S.W.3d 355, 359 (Tex. App.–Houston [1st Dist.] 2000, no pet.).

Returning to the cases involving a breach of the notice provision, the Court finds the rulings to be instructive. First, the cases involving an alleged breach of notice provision demonstrate that cases in which prejudice will be found as a matter of law area few and far between. *See, e.g., Coastal Refining & Marketing, Inc. v. U.S. Fidelity & Guar. Co.*, 218 S.W.3d 279, 287-88, 297 (Tex. App.–Houston [14th Dist.] 2007, pet. denied). Second, those cases discussing prejudice as a matter of law generally state that it exists only in limited circumstances – namely when there has been no notice of a claim. *See E. Tex. Med. Ctr. Regional Healthcare Sys. v. Lexington Ins. Co.*, No. 6:04-cv-165, 2011 WL 773452, at *6 (E.D. Tex. Feb. 25, 2011). If the notice is only untimely, a balancing approach applies so that the insurer must prove a lost opportunity – or, put another way, "that the insurer would have exercised the lost right" – and that having done so would have resulted in a "substantial likelihood" that the lost right would have "made a difference in the underlying action." *Id.* Thus, it is a consideration of the facts, or circumstances, of the case that controls whether prejudice exists.

The Court is not convinced that a true conflict of law exists between the jurisdictions. While Defendant contends that refusal to accept an insurer's tender of counsel demonstrates prejudice and, thus, a breach of the cooperation clause as a matter of law, *see* Dkt. No. 101 at 8, a review of the cases on which Defendant relies as well as the state of the law in California reveals that the rule is not so clear-cut. All of the decisions, while making a reference to inherent prejudice or prejudice as a matter of law, also reference that the decision is made based upon the facts of the case. Thus, as in Texas, it is an evaluation of the circumstances that determines whether prejudice exists.

Based on the foregoing, the Court cannot conclude that a true conflict of law exists or that the difference between the law of two jurisdictions, on this point, is such that the outcome would be different. *See Flagship Credit Corp.*, 481 F. App'x at 910; *Berry*, 2009 WL 804163 at *14.

And so the Court's choice-of-law decisions remain unchanged.

C.    *Applicability of Texas Insurance Code Article 21.42*

Plaintiff contends that Texas Insurance Code Article 21.42 further mandates that Texas law applies to all of its claims. *See* Dkt. No. 98 at 19-21. Defendant contends that Article 21.42, which mandates the application of Texas law, does not apply to Centex's contractual claims. *See* Dkt. No. 87 at 11.

Article 21.42 states:

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to

> be a contract made and entered into under and by virtue of
> the laws of this State relating to insurance, and governed
> thereby, notwithstanding such policy or contract of
> insurance may provide that the contract was executed and
> the premiums and policy (in case it becomes a demand)
> should be payable without this State, or at the home office
> of the company or corporation issuing the same.

TEX. INS. CODE ANN. ART. 21.42 (Vernon 1981). Thus, for Article 21.42 to mandate the

application of Texas law, Plaintiff must be a citizen or inhabitant of Texas.

It is a well-established general principle that a corporation is an inhabitant only

of the state where it is incorporated, although it may be authorized to conduct its

business in other states and may in fact reside in more than one place. *See Reddy Ice*

*Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 342 (Tex. App.–Houston [14th Dist.]

2004, pet. denied.) (citing *Suttle v. Reich Bros. Constr.*, 333 U.S. 163, 166, 68 S.Ct. 587,

92 L.Ed. 614 (1948) (noting that a corporation's habitat "can only be in the state by

which it was created, although it may do business in other states whose laws permit

it"); *Pittsburg Water Heater Co. of Tex. v. Sullivan*, 282 S.W. 576, 579 (1926) ("It is very

generally held that a corporation is an inhabitant of the state under whose law it is

incorporated, and that it has a residence wherever it conducts its ordinary business.")

(additional citations omitted)). While some exceptions to this principle do exist, no such

exception applies under Article 21.42, and therefore corporations not incorporated in

Texas cannot be considered an inhabitant of Texas for Article 21.42's purposes. *See*

*Reddy Ice Corp.*, 145 S.W.3d at 343-44.

None of Plaintiff's partners are incorporated in Texas. *See* Dkt. No. 66 at 1. It

does not appear that Plaintiff contests this fact or tries to argue that they were

previously incorporated in Texas. Instead, Plaintiff contends that, because Article 21.42 also mandates the application of Texas law to "any citizen" falling under the statute, it can be considered a citizen because its principle place of business is in Texas or, at least, was at the time of contracting. But, for these purposes, the mere fact that a plaintiff does business in Texas or has offices in Texas does not itself render the plaintiff a "citizen." *See TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 417 (E.D. Tex. 1998) (citing *Forcum-Dean Co. v. Missouri Pac. R.R. Co.*, 341 S.W.2d 464, 465 (Tex. Civ. App.–San Antonio 1960, writ dism'd)). The case law with respect to Article 21.42 does not appear to offer much guidance on the distinction between citizen and inhabitant and, in fact, indicates that there is not much distinction between the two. *See id.*; *Jones v. Francis Drilling Fluids, Ltd.*, No. G-07-0178, 2008 WL 5158268, at *4 (S.D. Tex. Dec. 9, 2008) ("Texas law defines an 'inhabitant' much as a 'citizen'.").[1]

Plaintiff's current and past complaints state that its principal place of business is in Michigan. *See* Dkt. No. 66 at 1. Plaintiff contends that its principal of business at the time of contracting was Texas and that that is what "matters." Notably, Plaintiff

---

[1] The Court also finds at least somewhat instructive 28 U.S.C. § 1332(c)(1), under which "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Plaintiff offers a few bare-bones assertions that, at the time of contracting, its principal place of business was Texas, even if it is not currently. To determine a business's principal place of business, the United States Court of Appeals for the Fifth Circuit employs the "total activity" test, which is comprised of the "nerve center" and "place of activity" tests. *Nauru Phosphate Royalties v. Drago Daic Interests*, 138 F.3d 160, 164 (5th Cir.1998). Plaintiff fails to provide much information to assess the principal place of business under this test, *see* Dkt. No. 78-6 at 3, but, based on the current record, the Court does not conclude that Plaintiff is a citizen of Texas.

offers no support for this contention that "it is the parties' location at the time of contracting, not suit, that matters." Dkt. No. 98 at 20. And the Court, having found none itself, is not persuaded by Plaintiff's argument.

Article 21.42 does not apply when any of its three requirements are not met. *See Reddy Ice*, 145 S.W.3d at 341-44. In this case, the insured who bargained for the insurance contract, Plaintiff, is neither an inhabitant nor citizen of Texas. The facts currently before the Court defeat the first requirement of Article 21.42. And so Article 21.42 does not mandate the application of Texas law.

But, with respect to the discrete issues discussed above, based on Texas choice-of-law rules, Texas law applies to the claims as detailed above.

In sum, and as is relevant to the pending motions, Texas law applies to what constitutes a breach of duty to defend, whether a breach of duty to defend forfeits the insured's right to control the defense, and the proof required to prevail on a noncooperation claim. As previously decided, Texas law also applies as to what constitutes a conflict-of-interest warranting independent counsel. Finally, Article 21.42 does not automatically mandate that Texas law applies to the above claims, or any claims not discussed, because Plaintiff has not put forth sufficient evidence at this time to prove that it is an inhabitant or citizen of Texas. As both parties agree, Texas law applies to all claims related to the Bay Villas Litigation.

2.    Breach of Contract Claims

Plaintiff claims that Defendant breached the contracts by delaying or failing to pay Plaintiff's defense costs as required under the policies and that, in doing so,

Defendant caused Plaintiff significant damages. *See* Dkt. No. 75 at 19-30. Defendant counters that Plaintiff did not fully cooperate and that, as such, any failure on Defendant's part was excused. *See* Dkt. No. 87. Both parties seek summary judgment in their favor on this claim.

A.    *Duty to Defend Claims*

Under Texas law, to recover on an action for breach of contract, a plaintiff must prove "(1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.– Houston [14th Dist.] 2005, pet. denied). Here, there does not appear to be any dispute that a valid contract exists.

The parties do dispute whether Plaintiff properly performed under the contract, triggering Defendant's duty to defend, and whether Defendant properly performed under the contract, assuming its duty to defend was triggered. Plaintiff alleges that it performed all of its contractual obligations under the policies and that Defendant acknowledged its duty to defend. *See* Dkt. No. 75 at 18-19. While Defendant may now concede that a duty to defend has been triggered subject to a reservation of rights, it argues that Plaintiff did not satisfy its obligations and that Plaintiff's actions constituted an unreasonable delay and failure to cooperate that excuses any alleged breach on Defendant's part. *See* Dkt. No. 87 at 17-29.

Under Texas law, a duty to defend is complete and all-encompassing. *See Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695,

701 (5th Cir. 1996); *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983) (citing Texas law). That is, once a duty to defend is triggered, the insurer must defend the case in its entirety and then later seek reimbursement for any items it claims were not covered. *See Rhodes*, 719 F.2d at 119; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

As noted by Plaintiff, an insurer's failure to make prompt payment of defense costs in excess of a retained amount can support a claim for breach of contract. *See Lexington Ins. Co. v. Nat'l Oilwell NOV, Inc.*, 355 S.W.3d 205, 215 (Tex. App.–Houston [1st Dist.] 2011, no pet.); *Kirby Co. v. Hartford Casualty Ins. Co.*, No. 3:02-cv-1616, 2004 WL 2165367, at *4 (N.D. Tex. Sept. 23, 2004) (finding that a breach of a duty to defend may be caused by an insurer's unreasonable delays). But, when a controversy exists regarding coverage, that controversy may be a legitimate reason for the failure of the insurer to make prompt payment. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Ener. Co.*, 780 S.W.2d 417, 426 (Tex. App. – Texarkana 1989), *aff'd*, 811 S.W.2d 552 (Tex. 1991).

Thus, the core issue when determining whether a breach of duty to defend occurred is whether either party's actions, or delays, were reasonable. The issues include where Plaintiff responded to Defendant's request within a reasonable time frame and whether Defendant provided coverage and payment of defense costs, if deemed appropriate, within a reasonable time frame.

The Court concludes that based on the record currently in front of it, the answers to these issues are appropriately left to the trier of fact.

The facts in *National Oilwell*, a decision on which Plaintiff relies, are distinguishable from the situation here. There, the insured complied with the notice provision as it related to the retained amount but allegedly failed to comply with a unilateral request made by the insurer related to notice. *See Nat'l Oilwell*, 355 S.W.3d at 214. No unilateral request was made here. To the contrary, there was no duty to defend until the Retained Amount was exhausted. *See* Dkt. No. 78-1 at 27; Dkt. No. 78-2 at 18, 54; Dkt. No. 78-3 at 18, 56 (all policies contain language stating that Defendant "do[es] not have the duty to investigate or defend any 'occurrence', offense, claim or 'suit' unless and until the Retained Amount is exhausted.").

The recitation of the facts, as detailed above, demonstrates the extensive evidentiary disputes in this case. Both parties claim to have acted properly, and both parties point to evidence to support their contentions. Plaintiff have pointed to letters and communications related to all of the policies that demonstrate that Plaintiff notified Defendant that it had allegedly exhausted the Retained Amounts. *See* Dkt. No. 78-8 at 28-34 (Astoria); Dkt. No. 78-6 at 8 (Element); Dkt. No. 78-8 at 20-21 (Legacy Villas); Dkt. No. 78-8 at 23 (Bay Villas). Defendant points to rebuttal evidence demonstrating that it did not receive the supporting documentation that it requested to confirm the Retained Amounts had been met. *See* Dkt. No. 78-8 at 43, 81 (Astoria); Dkt. Nos. 78-4 at 10 & 78-6 at 8 (Element); Dkt. No. 78-4 at 97, 101 & 88-5 at 4-10 (Legacy Villas); Dkt. No. 78-8 at 80 (Bay Villas).

The policies' language permits Defendant to investigate whether the underlying litigation was covered and further, whether its duty to defend had been triggered. *See*

Dkt. No. 78-1 at 27; Dkt. No. 78-2 at 18, 54; Dkt. No. 78-3 at 18, 56 (granting Defendant the right to investigate whether the claims were covered). And Defendant was permitted to reserve its rights under the terms of the Policies and did so.

The remaining evidence is conflicting. Plaintiff claims to have provided everything that Defendant requested in a timely manner as detailed above, and Plaintiff seems to indicate that, even after providing the requested information, Defendant would unreasonably delay by seeking more information. Defendant, on the other hand, cites evidence indicating that it was repeatedly requesting information from Plaintiff and that Plaintiff was not complying, as detailed above.

The parties do not even agree on the date that the exhaustion of the Retained Amount was proven for each claim. Plaintiff claims the following are the dates of exhaustion: April 16, 2012 (Astoria), November 15, 2011 (Element), May 2, 2012 (Bay Villas), and September 20, 2010 (Legacy Villas). Defendant claims that it may have received notice of exhaustion on or near those dates but that the supporting evidence did not come until much later: December 6, 2012 (Astoria), October 2012 (Element), August 2012 (Bay Villas). And, while it is unclear on what date Defendant agreed that the Retained Amount had been met in the Legacy Villas Litigation, the latest would have been at the time that the Arbitration Panel made its findings – February 18, 2013. Regardless, Defendant did acknowledge a duty to defend, subject to a reservation of rights, before that date. *See* Dkt. No. 78-5 at 90-91.

The parties also dispute the amount of defense costs paid by Defendant to date and whether the payments are on-going.

These evidentiary disputes, supported by affidavits, documents, and deposition testimony, demonstrate the existence of a genuine dispute of material fact. As such, summary judgment is not proper in either party's favor related to a breach of a duty to defend based on (1) an unreasonable delay in acknowledging a duty to defend or (2) delaying or failing to pay defense costs.

B.   *Right to Control Defense / Selection of Counsel Claims*

Plaintiff also alleges that, with respect to the Astoria and Element Litigation, a disabling conflict of interest existed between Defendant's coverage defenses and the Astoria Litigation. Plaintiff claims that, as a result, it had a right to conduct its own defense, Defendant had no excuse for its failure, or delay in, paying defense costs, and Defendant has breached its contractual duty as a matter of law. *See* Dkt. No. 75 at 23-25. Plaintiff contends that Defendant's "right to control" defense does not, and cannot, preclude summary judgment in Plaintiff's favor. But Plaintiff does not raise this argument with respect to its Legacy Villas or Bay Villas claims.

In its response, Defendant contends that Plaintiff's arguments related to selection of counsel are "half-hearted." Dkt. No. 87 at 19. Defendant argues, under California law, that there is no conflict of interest warranting selection of independent counsel because the alleged conflicts raised by Plaintiff are not actual conflicts. *See id.* at 20-21. Defendant also asserts that Plaintiff's wrongful refusal of its selected counsel is yet another demonstration of a lack of cooperation. *See id.* at 28.

Under Texas law, an insurer's "right to defend" a lawsuit encompasses the right to select counsel who will defend the claim and make the decisions that might normally

be left to the insured, unless a conflict of interest exists. *See* Dkt. No. 126 at 12; *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627-28 (Tex. 1998); *Rx.com Inc. v. Hartford Fire Ins. Co.*, 426 F. Supp. 2d 546, 559 (S.D. Tex. 2006). Simply issuing a reservation of rights will not create a conflict of interest allowing an insured to select independent counsel. *See N. County Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 688 (Tex. 2004); *Rx.com Inc.*, 426 F. Supp. 2d at 559. Rather, a conflict of interest allowing an insured to select its own counsel exists where "the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends." *Davalos*, 140 S.W.3d at 680; *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 567 (S.D. Tex. 2012) (stating that a true conflict of interest exists when it is apparent that the facts on which coverage depends will be ruled on judicially in the underlying lawsuit).

The conflict of interest must exist at the time that the reservation of rights is issued. It is not enough that "coverage issues may turn on facts developed in the [underlying] litigation." *Downhole Navigator, L.L.C. v. Nautilus Ins. Co.*, 686 F.3d 325, 330 (5th Cir. 2012). Thus, it is not sufficient that a reservation of rights creates a "potential" conflict of interest. *See Coats, Rose, Yale, Ryman & Lee, P.C. v. Navigators Specialty Ins. Co.*, 830 F. Supp. 2d 216, 219 n.3 (N.D. Tex. 2011) (citing *Davalos*, 140 S.W.3d at 689).

In its reservation-of-rights letters, Defendant made reference to several blanket exclusions and limitations in the policies. The policies all contain an extensive list of exclusions – instances in which coverage would not exist. In Defendant's reservations

of rights, Defendant reserved its right to contest coverage under numerous exclusions but only generically referred to the exclusions and did not contend that any of the allegations in the underlying litigation explicitly fell under a policy exclusion. *See* Dkt. No. 78-4 at 14-16 (Astoria); Dkt. No. 78-4 at 53-58 (Element). Some of the reservations included the right to decline coverage for the claim to the extent that it does not constitute property damages as defined in the policy; to the extent that any property damages occurred or commenced outside the effective coverage dates; to the extent that subsequent insurance applies to the claim; to the extent that any property damage was expected or intended from the standpoint of the insured; or to the extent that the claim falls under a business risk exclusion. Other, generic reservations were also included in the reservations. In fact, the most specific reservations that Defendant made are that, "to the extent plaintiffs" in the underlying litigation allege or seek something that falls under the exclusions, coverage would be excluded. Dkt. No. 78-4 at 14-16 (Astoria); Dkt. No. 78-4 at 53-58 (Element).

Plaintiff has not shown that, as a matter of law, the facts to be decided in the underlying lawsuit are the same facts that would defeat coverage by triggering a policy exclusion or some other coverage limitation. *See Rx.com Inc.*, 426 F. Supp. 2d at 560-61. *Compare Housing Auth. of City of Dallas, Tex. v. Northland Ins. Co.*, 333 F. Supp. 2d 595, 601 (N.D. Tex. 2004) (finding a conflict of interest where the underlying complaint alleged willful violations of Title VII and the insurer had "reserved its rights to disclaim coverage on ... a willful violation of a statute.").

The parties have now informed the Court that all underlying litigation had been settled, so the Court is also uncertain how any further evidence would demonstrate that an actual conflict of interest warranting independent counsel might be proven to have existed going forward, if such a showing were even permitted.

The Court also notes that the parties' summary judgment evidence – of which there is no small amount – does not contain much discussion by Plaintiff demonstrating that Plaintiff thought there was an apparent conflict of interest warranting the selection of independent counsel. Plaintiff submits an affidavit from an N&D attorney that indicates a conflict-of-law could exist, but, more explicitly, it simply states that prejudice would occur if new counsel were selected at this late juncture. *See* Dkt. No. 78-9 at 45-48. The evidence does, however, contain communications between N&D and Defendant, apprising Defendant of the status of the litigation, including certain strategic decision being made and to be made. *See* Dkt. No. 88-3 at 3-15.

On the current record, Plaintiff has not shown a conflict of interest existed that, as a matter of law, entitled it to select independent counsel. To the contrary, the evidence demonstrates that Plaintiff did not take that position before filing the lawsuit and permitted its counsel to share information with, and attempt to work with, Defendant. The evidence also shows that there was no clear overlap between Defendant's reservation of rights and the liability litigation.

As such, the Court concludes that summary judgment on this issue is proper in Defendant's favor. That is, the Court determines that the evidence before it warrants

a conclusion that, as a matter of law, Plaintiff was not entitled to select independent counsel based on a conflict of interest.

This determination does not, however, warrant summary judgment on any outcome-determinative claim. As discussed above, the record demonstrates a genuine dispute of material fact as to whether Plaintiff breached its duty to cooperate by providing Defendant with all the necessary and requested information and whether Defendant's delay or failure to pay was unreasonable and constituted a breach of the Policies or was excused by Plaintiff's conduct.

In sum, the Court denies Plaintiff's motion for summary judgment on its breach of contract claims as it relates to whether Defendant acknowledged its duty to defend and reasonably paid defenses costs and as it relates to Plaintiff's right to select independent counsel. The Court also denies Defendant's Cross-Motion as it relates to Plaintiff's duty to cooperate and provide the necessary information to make a coverage decision. Based on the record now in front of it, the Court grants summary judgment on Defendant's claim that Plaintiff was not entitled to select independent counsel on the ground that an actual conflict of interest existed. But this conclusion has no effect on Plaintiff's breach of contract claims as Plaintiff might still have been entitled to select independent counsel if it is found that Defendant breached its duties under the policies.

3.   <u>Texas Insurance Code Chapter 542 Claim</u>

Texas Insurance Code's Prompt Payment Statute applies to "any insurer authorized to engage in business as an insurance company or to provide insurance in

[Texas]." TEX. INS. CODE § 542.052. Because Defendant falls into this category, and because the Court previously determined that Texas law applied to Plaintiff's breach of duty to defend based on allegations that Defendant failed to timely make payments, the Court concludes that this statute applies in the instant case.

Under the statute, an insurer has fifteen days after receiving notice of a claim to (1) acknowledge receipt, (2) commence an investigation, and (3) "request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant." TEX. INS. CODE § 542.055. If the investigation reveals additional information is needed from the claimant, the insurer may make additional requests. *See id.* § 542.055(b). The statutory deadlines for accepting and paying the claim do not begin to run until the insurer has "receive[d] all items, statements, and forms required by the insurer to secure final proof of loss." *Id.* §§ 542.056(a), 542.058. Part of the insured's obligation under the statute is to submit its legal bills to the insurance company, as received. *See Lamar Homes, Inc. v. Mid-Continent Casualty Co.*, 242 S.W.3d 1, 19 (Tex. 2007).

As discussed in detail above, a genuine dispute of material fact exists with respect to whether, and when, Plaintiff provided to Defendant, and Defendant received, all of the items, statements, and forms that Defendant felt were required to make an assessment as to whether the Retained Amount was met. As such, summary judgment is not appropriate for either party on the Chapter 542 claims.

4.      Plaintiff's Requests for an Award of Attorneys' Fees and Pre-Judgment Interest

Plaintiff has not prevailed on any of its summary judgment claims. An award of attorneys' fees or pre-judgment interest is not warranted at this time, and Plaintiff's motion for summary judgment on these claims is denied.

5.      The Parties' Objections to Summary Judgment Evidence

Each party filed objections to the other's summary judgment evidence. *See* Dkt. No. 95 (Lexington's Objections to Centex's Summary Judgment Evidence); Dkt. No. 105 (Plaintiff's Objection to Lexington's Summary Judgment Evidence). Plaintiff filed a response to Defendant's objections. *See* Dkt. No. 104. Having considered the objections and the evidence, the Court makes the following rulings.

Lexington objects to the affidavits filed by Plaintiff as containing conclusory and unsubstantiated allegations. *See* Dkt. No. 95 at 1. The Court did not rely on the statements to which Defendant objects in Jarrett Coleman's, Philip D. Kopp's, Rosamaria Y. Greaves's, and John Brian Morrow's affidavits, and as such, those objections are overruled as moot. To the extent that the Court relied on any statements, the Court found, and cited to, supporting documentation, such as the actual findings in the arbitration proceeding or the actual communications, and not the affidavit alone. While the Court did reference the statement made in J. Nathan Owens's affidavit regarding the Element Litigation invoices being sent, the Court also noted, and relied on, the fact that no such invoices were attached to the summary judgment evidence. These objections are therefore overruled as moot.

-41-

Defendant objects to certain exhibits and evidence on the ground that they contain inadmissible hearsay. For Exhibits 1-F through 1-J and 1-P, Defendant asserts nothing more than they "include inadmissible hearsay" and that Plaintiff has not properly established they are subject to any hearsay exception. Defendant's objections are insufficient. *See* FED. R. EVID. 103(a)(1) (requiring an objecting party to make specific objections detailing the specific evidence that the party wishes to have stricken and stating the specific grounds upon which each piece of evidence should be stricken); *Payne v. Park*, No. 3:11-cv-497-B, 2012 WL 2958624, at *3-*4 (N.D. Tex. July 19, 2012). And, in light of Defendant's blanket assertions, the Court is persuaded by Plaintiff's arguments that the exhibits are being offered not for the truth of the matter asserted but for the purpose of showing that Plaintiff requested payment and that Defendant knew that Plaintiff contended it had not received payment. The objections to Exhibits 1-F through 1-J and 1-P are overruled without prejudice to Defendant's offering more specific objections, if necessary, at any trial.

As to Exhibit 3-B, the Court is again persuaded by Plaintiff's response to Defendant's objection. The letter was not being offered to demonstrate that the invoices were sent but rather to demonstrate that Plaintiff contends that it sent the invoices. The Court even noted this distinction and limitation in its recitation of the facts. As such, objection to Exhibit 3-B is overruled without prejudice.

As to Exhibit 7-C, the Court is persuaded by Plaintiff's response to Defendant's objection. The letter is not being offered as, or considered for, the truth of the matter asserted but rather to demonstrate that Plaintiff notified and informed Defendant of

its position. The Court did not take as true the contents of the letter but rather only relied on it to determine what Plaintiff was contending. As such, Defendant's objection to Exhibit 7-C is overruled without prejudice.

The Court did not rely on the checks referenced in Exhibit 3-E, on the documents submitted as Exhibit 5-A, or the communications submitted as Exhibit 8-D and, as such, overrules the objections to this evidence as moot.

For these reasons, Defendant's objections to Plaintiff's summary judgment evidence [Dkt. No. 95] are OVERRULED.

Plaintiff objected to Exhibits 1-26 of Defendant's summary judgment evidence – that is, all of its evidence – as not properly authenticated. *See* Dkt. No. 105. Plaintiff contends that, while Defendant "attempt[ed] to authenticate these exhibits as 'business records' through the affidavit of John Edwards," the authentication fails to meet all of the requirements under Federal Rule of Evidence 803(6)(A)-(C). *See id.* at 1-2.

The United States Court of Appeals for the Fifth Circuit has explained the business records exception's application as follows:

> A business record can be authenticated by testimony of either the "custodian" of the record or an "other qualified witness." We define "other qualified witness" as "one who can explain the record keeping of the organization and vouch that the requirements of Rule 803(6) are met." We have also stated that a business record can be admitted into evidence "where circumstances indicate that the records are trustworthy." We have affirmed the introduction of evidence even when the affiant neither prepared nor had first-hand knowledge of the preparation of the document, so long as the witness's testimony was sufficient to support the document's reliability.

*Travland v. Ector Cnty., Tex.*, No. 93-8560, 39 F.3d 319, 1994 WL 612342, at *4 (5th Cir. Oct. 20, 1994).

Based on this standard, the fact that Edwards is not a custodian of all litigation records is not determinative. Contrary to Plaintiff's assertions, it is also not outcome determinative that Edwards was not the author or recipient of the documents. *See U.S. v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008) ("There is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy.").

Edwards is an assistant vice-president of complex casualty claims and was responsible for overseeing the underlying litigation claims against Centex in the policies at issue in the instant case. *See* Dkt. No. 88-1 at 1-2. He also states that the information is based on his personal knowledge and review of the documents "maintained by AIG in the normal and ordinary course of their business operations." *Id.* at 2. Finally, Edwards testifies that Exhibits 1-26 are documents that were all included in the claim files for the relevant underlying litigation and are true and correct copies of the documents as they are received and retained in the regular course of Defendant's business. *See id.*

This testimony is sufficient to meet the requirements of an "other qualified witness" under the business records exception. *See Albright v. IBM Lender Business Process Servs., Inc.*, No. 4:11-cv-1045, 2013 WL 1089053, at *2 (S.D. Tex. Mar. 14, 2013). Consequently, the authentication of Defendant's business records is adequate

to establish their reliability and to allay the hearsay concerns that underlie the business records doctrine.

For these reasons, Plaintiff's objections [Dkt. No. 105] are OVERRULED without prejudice.

## Conclusion

Plaintiff's Motion for Partial Summary Judgment on its Breach of Contract and Chapter 542 Claims [Dkt. No. 74] is DENIED.

Defendant's Cross-Motion [Dkt. No. 86] is GRANTED as to a determination that Plaintiff was not entitled to select independent counsel based on a conflict of interest and is DENIED in all other respects.

Defendant's Motion for Reconsideration [Dkt. No. 137] is DENIED.

Defendant's Motion for Leave [Dkt. No. 100] is DENIED as moot.

Defendant's objections to Plaintiff's summary judgment evidence [Dkt. No. 95] are OVERRULED without prejudice.

Plaintiff's objections to Defendant's summary judgment evidence [Dkt. No. 105] are OVERRULED without prejudice.

SO ORDERED.

DATED: June 16, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE